**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 23-61256-CIV-CANNON**

**MONARCH AIR GROUP, LLC**,

       Plaintiff,

v.

**JOURNALISM DEVELOPMENT**
**NETWORK, INC.** and
**LILY DOBROVOLSKAYA**,

       Defendants.

_____/

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**
**AND TO AWARD ATTORNEY'S FEES**

**THIS CAUSE** comes before the Court upon Plaintiff's Motion to Remand to State Court and to Award Attorneys' Fees Incurred as a Result of Removal, filed on July 25, 2023 (the "Motion") [ECF No. 14]. The Court has reviewed the Motion [ECF No. 14], the Response in Opposition filed by Defendant Journalism Development Network, Inc. [ECF No. 21], Plaintiff's Reply [ECF No. 22], and the full record. For the reasons set forth below, the Motion [ECF No. 14] is **DENIED**.

**BACKGROUND**

This is a defamation action arising out of two publications which Plaintiff claim falsely connect it to criminal activity and corruption: (1) an article authored by Defendant Dobrovolskaya and distributed by Defendant Journalism Development Network, Inc. ("JDN"); and (2) a separate tweet authored by Defendant Dobrovolskaya.[1]

---

[1] There is some dispute in the parties' filings about the correct spelling of Defendant Dobrovolskaya's last name [*See* ECF No. 1 p. 1 n.1; ECF No. 14 p. 3 n.2; ECF No. 21 p. 4 n.2].

Plaintiff is an airline with its principal place of business in Fort Lauderdale, Florida [ECF No. 1-2 ¶ 21]. Defendant JDN, which is headquartered in Maryland, owns and controls the Organized Crime and Corruption Report Project (OCCRP) [ECF No. 1-2 ¶¶ 1, 22]. Defendant Dobrovolskaya is a freelance investigative journalist [ECF No. 1-2 ¶ 23].[2]

On November 27, 2020, JDN, through OCCRP, published an article about Plaintiff that had been authored by Defendant Dobrovolskaya (the "Article") [ECF No. 1-2 ¶ 1]. Plaintiff claims that the Article contained "multiple factually false statements, misleading innuendos, and unsupported claims about criminal activity and corruption" [ECF No. 1-2 ¶ 2]. The Article was based on statements from disgruntled employees, and Plaintiff was not given an opportunity to respond to many of the claims in the Article [ECF No. 1-2 ¶¶ 3–4].

Additionally, on November 28, 2020, Defendant Dobrovolskaya sent a tweet about Monarch allegedly tying its Mercury Jets division to a "eponymous company in Moscow" and a "Moscow-based commercial bank Sibcontact bank" [ECF No. 1-2 ¶ 64; ECF 1-2 p. 81].

In March 2021, Plaintiff confronted Andrew Sullivan, JDN's principal officer and the co-founder/editor of OCCRP to inform him of the inaccuracies in the Article [ECF No. 1-2 ¶ 5]. Sullivan promised to amend the Article within 48 hours [ECF No. 1-2 ¶ 5]. Despite several

---

For purposes of this Order, the Court uses the spelling of Defendant Dobrovolskaya's name as it appears in the Complaint [ECF No. 1-2 p. 7].

[2] There is some dispute about Defendant Dobrovolskaya's citizenship. The Complaint, as filed in state court, states that she "is believed to be a Florida resident" [ECF No. 1-2 ¶ 23]. However, the Notice of Removal states that Defendant Dobrovolskaya is a "citizen of Russia . . . domiciled in New York, New York," which Plaintiff knew when issuing its summons [ECF No. 1 ¶¶ 8–9; ECF No. 1-6]. Plaintiff does not contest JDN's characterization of Defendant Dobrovolskaya's citizenship, asserting only that it is "not supported by any document *received from Plaintiff*" [ECF No. 14 p. 3 n.4 (emphasis in original)]. Plaintiff's only other statement regarding Defendant Dobrovolskaya's citizenship is that, "[a]t the time [it] filed its complaint[,] it believed that Ms. Dobrovolskaya was a Florida resident based on her work for the Miami Herald and her articles' Florida focus" [ECF No. 14 p. 3].

requests by Plaintiff to have the Article taken down while the changes were being made [ECF No. 1-2 ¶¶ 10–14; ECF No. 1-2 pp. 35–56], JDN republished the Article on the OCCRP website in June 2021 under the title *The Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob* [ECF No. 1-2 ¶ 29; ECF No. 1-2 pp. 66–79]. In June 2021, when JDN still had not made any changes to the Article, Plaintiff submitted a formal claim with the relevant authorities [ECF No. 1-2 ¶ 6].

On the basis of these allegations, Plaintiff filed a three-count complaint in the Seventeenth Judicial Circuit of Florida in and for Broward County, Florida, asserting the following:

(1) Defendants published the Article, containing false and defamatory statements, which Defendants knew or reasonably should have known were false, rendering them liable for defamation [ECF No. 1-2 ¶¶ 53–58] (Count I – Defamation *Per Se*);

(2) the Article, published by Defendants, juxtaposed information and conveyed incomplete information about Plaintiff, which Defendants knew or reasonably should have known were false, rendering them liable for defamation [ECF No. 1-2 ¶¶ 59–62] (Count II – Defamation by Implication); and

(3) Defendant Dobrovolskaya is liable for defamation because her November 2020 tweet contained statements she knew or should have known were false [ECF No. 1-2 ¶¶ 63–68] (Count III – Defamation *Per Se* Against Author).

JDN timely removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332 [ECF No. 1 p. 4].[3] Plaintiff then filed the instant motion to remand, challenging the amount-in-controversy [ECF No. 14].

## LEGAL STANDARD

District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and there is diversity of citizenship. *See* 28 U.S.C. § 1332. "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must

---

[3] Plaintiff has not yet filed proof of service showing that Defendant Dobrovolskaya has been served with the summons and Complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(m) (requiring service within 90 days after the Complaint is filed).

prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). The sufficiency of the amount in controversy is determined at the time of removal. *Pretka*, 608 F.3d at 751. "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754. Instead, a removing defendant is required only to prove that the amount in controversy "more likely than not exceeds the [applicable] jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Federal courts must construe removal statutes strictly and resolve any doubt as to jurisdiction in favor of remand to state court. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

## DISCUSSION

The jurisdictional issue in dispute is whether the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332. Plaintiff's Complaint seeks damages under two separate causes of action against both Defendants under Florida common law—defamation *per se* and defamation by implication [ECF No. 1-2 ¶¶ 53–62]—and separately seeks damages for defamation *per se* against Defendant Dobrovolskaya [ECF No. 1-2 ¶¶ 53–68]. The first two counts incorporate allegations about the allegedly defamatory Article authored by Defendant Dobrovolskaya and published by JDN [ECF No. 1-2 ¶¶ 53, 59 (incorporating same paragraphs 1–44)]. The final count is targeted at an allegedly defamatory tweet published by Defendant Dobrovolskaya [ECF No. 1-2 ¶ 64]. As for damages, the Complaint seeks "damages in excess of $30,000 for the reputational damage that [Plaintiff] suffered because of the defamatory Article . . . that Defendants published" [ECF No. 1-2 ¶ 20]. It does not reference particular allegations quantifying or otherwise specifying

the requested amount of monetary relief, thus requiring the Court to look to the Notice of Removal and to the evidence proffered by JDN to determine the amount in controversy [*see* ECF No. 1-2 pp. 15–17 (seeking an award of "compensatory and consequential damages" but "reserv[ing] the right to amend its complaint to seek punitive damages")].

JDN argues that the amount in controversy is satisfied because Plaintiff, in response to JDN's First Set of Interrogatories, stated that it was seeking "around $63,000.00" in damages for each count of the Complaint, which in the aggregate exceeds $75,000 [ECF No. 21 pp. 7–12; *see also* ECF No. 1 ¶ 22; ECF No. 1-8].  JDN also points to Plaintiff's state court civil cover sheet, which indicates damages "over $100,000.00," and to a pre-suit email sent by Plaintiff's sole manager to JDN stating that Plaintiff had incurred "millions of dollars" in lost revenue as a result of the Article [ECF No. 21 pp. 12–13; ECF No. 1 ¶ 12; ECF No. 1-2 p. 4 (state court civil cover sheet); ECF No. 1-5 p. 6 (pre-suit email)].  Plaintiff disagrees, arguing that the amount in controversy is $63,000 in total, and that JDN incorrectly trebles the damages asserted in Plaintiff's response to JDN's interrogatories [ECF No. 14 pp. 7–8].  Plaintiff also observes that any reliance on Plaintiff's pre-suit demand email is misplaced, because it does not meet the requirement of "specific and corroborating evidence" to establish the amount in controversy [ECF No. 14 p. 8 (quoting *Stern v. First Liberty Ins.*, 424 F. Supp. 3d 1264, 1273 (S.D. Fla. 2020))].  Finally, with respect to the state court civil cover sheet, Plaintiff says it has since learned new information that warrants a downward revision of its expected damages, citing to an expert in a separate case who determined that damages attributable to Defendants' article was low "because of its limited distribution[,] especially in [Plaintiff's] target market" [ECF No. 14 pp. 8–9].

Following a review of the record, the Court determines that the amount in controversy is satisfied on the basis of Plaintiff's response to JDN's interrogatories as further supported

by Plaintiff's pre-suit demand email and by the state court civil cover sheet listing damages in excess of $100,000.

To establish the requisite amount in controversy, JDN relies primarily on Plaintiff's responses to its interrogatories in which Plaintiff asserts that it is claiming $63,000 in damages as to *each* of the three counts in the Complaint [ECF No. 1-8; ECF No. 21 pp. 7–12].[4]  While Plaintiff argues that the $63,000 listed in its responses should be read as a total amount of damages sought as to the *entire* case [ECF No. 14 pp. 7–8], the interrogatories read differently.  Plaintiff was separately asked to provide an amount of damages as to each count of the Complaint [ECF No. 1-8]—and each time, Plaintiff responded by providing a figure of $63,000, without notation that the amount encompassed all three counts [*See* ECF No. 1-8].  Further, as JDN correctly explains, Plaintiff is seeking recovery for distinct theories—defamation *per se* (Count I) and defamation by implication (Count II) stemming from different actions by JDN [ECF No. 21 pp. 10–11; ECF No. 1-2 ¶¶ 54–61].  On this record, JDN appropriately aggregated the damages as to Counts I and II in calculating the amount in controversy—yielding a total amount in controversy of $126,000 [*see* ECF No. 1-8].  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 585 (2005) (noting well settled rule that claims against a single defendant can be aggregated to satisfy the amount in controversy requirement, "even if the claims are unrelated").[5]

Plaintiff's challenges to the amount in controversy are not persuasive.  Plaintiff argues, for example, that the pre-suit demand letter and state court civil cover sheet are insufficient to meet

---

[4] The Eleventh Circuit has made clear that interrogatory responses qualify as "other paper" under 28 U.S.C. § 1446(b)(3).  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007).

[5] Because this is sufficient to establish an amount in controversy exceeding $75,000, the Court need not address JDN's alternative argument that the aggregate amount in controversy sought against Defendant Dobrovolskaya also exceeds the required amount [ECF No. 21 pp. 11–12].

JDN's burden to prove the requisite amount in controversy [ECF No. 14 pp. 8–9]. But those items are not the sole items used to establish the amount in controversy in this case—for the reasons stated above as relate to Plaintiff's responses to JDN's interrogatories [ECF No. 21 pp. 12–13]. Plaintiff also argues that its admissions—in which Plaintiff denies seeking an award in excess of $75,000—should be conclusive [ECF No. 14 p. 8]. But Eleventh Circuit precedent makes clear that a refusal to stipulate that the amount in controversy exceeds $75,000 is not conclusive on the question of whether the amount in controversy is in fact satisfied. *Williams v. Best Buy Co*., 269 F.3d 1316, 1320 (11th Cir. 2001). And, as other courts have noted, a district court is not precluded from exercising jurisdiction where a plaintiff "refuses to acknowledge that [it] is seeking the requisite damages." *Devore v. Howmedica Osteonics Corp*., 658 F. Supp. 2d 1372, 1380 (M.D. Fla. 2009). Here, Plaintiff's requests for admission state that they are made "[b]ased on the information currently in front of [Plaintiff]," and that Plaintiff "reserves the right to amend its response to this request based on the discovery that it hopes to obtain while perusing this case" [ECF No. 1-9 p. 2]. Yet Plaintiff submits no affidavit or other evidence to establish that the claim is less than the jurisdictional amount. *See Devore,* 658 F. Supp. 2d at 1380 n.13 (stating that "if [plaintiff] were sincere in her contention that the amount in controversy is not met, she could have submitted affidavits admitting the claim was less than the jurisdictional amount if that is what the motion to remand was meant to accomplish." (internal quotation marks omitted)). Accordingly, Plaintiff's equivocal responses are not sufficient to deprive the Court of jurisdiction, especially when considered in conjunction with the above evidence demonstrating the amount in controversy exceeds the requisite amount.[6]

---

[6] *See Devore*, 658 F. Supp. 2d at 1380–81. *See generally, e.g., Guy v. Schwing Bioset Inc.*, No 19-CV-1682, 2020 WL 10355096 (M.D. Fla. Apr. 20, 2020); *Hallenbeck v. Target Corp.*, No. 18-CV-891, 2018 WL 4279245 (M.D. Fla. Sept. 7, 2018); *Thompson v. Columbia Sussex Corp.*, No. 16-CV-435, 2016 WL 6134868 (M.D. Fla. Oct. 21, 2016); *Stephenson v. Amica Mut.*

CASE NO. 23-61256-CIV-CANNON

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand to State Court and Request for Attorneys' Fees [ECF No. 14] is **DENIED**.

2. On or before **September 29, 2023**, Plaintiff shall file proof of service on Defendant Lily Dobrovolskaya in accordance with Rule 4 of the Federal Rules of Civil Procedure. **Failure to do so will result in Plaintiff's claims against Defendant Dobrovolskaya being dismissed without further notice**. *See* Fed. R. Civ. P. 4(m).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 25th day of September 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

*Ins. Co*., No. 14-CV-978, 2014 WL 4162781 (M.D. Fla. Aug. 21, 2014); *Wilson v. Target Corp.*, No. 10-80451-CIV, 2010 WL 3632794 (S.D. Fla. Sept. 14, 2010).