IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 23-61256-CIV-CANNON

MONARCH AIR GROUP, LLC,
a Florida Limited Liability Company,

    Plaintiff,

v.

JOURNALISM DEVELOPMENT
NETWORK, INC., A Maryland Corporation,
and LILY DOBROVOLSKAYA,

    Defendants.
_____/

**LILY DOBROVOLSKYA'S REPLY IN SUPPORT OF HER
MOTION TO DISMISS FOR INSUFFICENT SERVICE OF PROCESS,
LACK OF JURISDICTION, AND FAILURE TO STATE A CLAIM**

Faced with insurmountable record facts showing that it has never properly served Defendant Lily Dobrovolskaya ("Dobrovolskaya"), Plaintiff Monarch Air Group, LLC ("Plaintiff" or "Monarch") takes a novel approach to challenging Dobrovolskaya's Motion to Dismiss – it simply pretends that the record facts don't exist. Most critically, despite Dobrovolskaya's sworn and *uncontradicted* declaration stating that she has not lived at 245 E. 10th Street, Apt. 3, New York, NY, for more than four years, Monarch assures the Court – without an affidavit, without property records, and without any documentary evidence whatsoever – that that address is her usual place of abode. [*See* ECF No. 49, Response to Lily Dobrovolskaya Motion to Dismiss ("Response") at p. 2] As Monarch surely realizes, however, it is not entitled to rely on "facts" that it merely wishes were true. It must present evidence to establish facts, but since Dobrovolskaya does not live at 245 E. 10th Street, Apt. 3, New York, NY, there is no evidence Monarch could ever present to support its argument.

In the alternative, nearly 15 months after this action was originally filed in state court, Monarch seeks yet more time and discovery ostensibly to confirm that Dobrovolskaya does not in fact live where process allegedly was served. *Id.* In this regard, despite having *five weeks* to rebut Dobrovolskaya's sworn declaration, Monarch proffers no evidence of any kind to support its request to take depositions that it characterizes as "jurisdictional discovery." Instead, Monarch disingenuously complains that it has been prevented from taking any discovery since removal. *Id.* at p. 3. But the record clearly demonstrates that not only is Monarch's request belated and improper, but also there is no genuine issue of fact which would justify further discovery.

Finally, Monarch's arguments about Florida Statute Section 770.01 – which requires a plaintiff to provide pre-suit notice to a journalist before suing her for defamation – simply disregard controlling law. Because Monarch never provided Dobrovolskaya with the requisite pre-suit notice, its claims against her must be dismissed for that additional reason.

## Discussion

**I.    Monarch Has Failed To Properly Serve Dobrovolskaya.**

### A.   Because Dobrovolskaya Does Not Reside At The Address Where Monarch Attempted Substituted Service, She Has Not Been Properly Served.

Seeking to establish that Dobrovolskaya was properly served, Monarch makes a series of patently inapt arguments. First, citing *Hollander v. Wolf*, No. 09-80587-CIV, 2009 WL 3336012 (S.D. Fla. Oct. 14, 2009), a case in which substituted service *was quashed*, Monarch asserts that (1) a signed return of service is prima facie evidence of proper service and (2) that if a plaintiff makes a prima facie showing of proper service, the burden shifts to the defendant to counter that evidence with "strong and convincing evidence of insufficient process." [ECF No. 49 at p. 1]

Here, Monarch claims to have made a prima facia showing of proper service based upon two signed returns of service from a process server who delivered the Complaint to a purported

2

"property manager" (identified as "Matt W") at 245 E. 10th Street, Apt. 3, New York, NY. But Dobrovolskaya countered that evidence with her signed declaration, stating that she (1) has *not* been personally served with the Complaint in this matter, (2) does *not* live at 245 W. 10th Street, Apt. 3, New York, NY, (3) has *not* lived at that address since 2019, (4) has *not* used that address as her mailing address since 2019, (5) does *not* know the current tenants at that address, and (6) does *not* know a property manager named Matt W. [ECF No. 45-3 at ¶¶ 3-8]

Dobrovolskaya's sworn declaration is precisely the type of "strong and convincing evidence" the *Hollander* decision recognized as establishing that service was ineffective. *Hollander*, 2009 WL 3336012, at *3 (affidavit showing that defendant did not reside at address where service was delivered was sufficient to quash service of process). As the *Hollander* decision also recognized, however, Monarch had the right to offer its own declarations countering Dobrovolskaya's declaration. *Id.* at *4. But despite that opportunity, Monarch has not offered any counter evidence. Instead, Monarch chose to rest on its process server's highly equivocal comments, including that the property manager at the address listed would give the summons to "the tenants" in apartment 3, but "seemed *unsure* if [Dobrovolskaya] lived there *once he read the papers*." [ECF No. 38-1 at p. 2; emphasis added]

The record evidence is uncontradicted that Dobrovolskaya does not reside at 245 W. 10th Street, Apt. 3, New York, NY, and has not resided there since 2019, meaning it is not her "dwelling place" or "usual place of abode." Accordingly, Monarch's efforts to serve her there are insufficient as a matter of law. *Brunett v. Nirvana Health Servs., Inc.*, No. 6:19-cv-1450-Orl-41GJK, 2020 WL 1190998, at *2 (M.D. Fla. Feb. 26, 2020) (plaintiff could not effectuate substituted service where there was no evidence defendant actually lived at the address where the summons was delivered), *adopting report & recommendation*, 2020 WL 1188844 (Mar. 12, 2020); *Triad Energy*

*Corp. v. McNell*, 110 F.R.D. 382, 385-86 (S.D.N.Y. 1986) (finding that service was not proper where defendants' sworn affidavits indicated they were residing in Colorado on the day of service).

Monarch next states that it is permissible to deliver the summons and Complaint to the property manager at a defendant's "residence or usual place of abode" if the property manager refuses to permit access to the building. [ECF No. 49 at p. 2] Regardless of whether that statement of the law is accurate, it is immaterial here because Dobrovolskaya does not live at the apartment building where Monarch delivered process. Because it is not her "residence" or "usual place of above," substituted service of process simply cannot be achieved at that location.

And finally, Monarch seems to suggest that Dobrovolskaya was required to present evidence establishing where she currently lives in order to prove that she does not live at 245 W. 10th Street, Apt. 3, New York, NY. Not surprisingly, Monarch cites no authority for this proposition. Dobrovolskaya is under no legal duty to inform Monarch of her current address. In fact, in the *Hollander* decision relied upon by Monarch, the defendant established that service of process was improper without ever disclosing his current address. *See Hollander*, 2009 WL 3336012, at *3-4. Dobrovolskaya's uncontradicted declaration defeats Monarch's unsupported assertion that it has effectuated proper service of process on her. *Id.*

### B. Monarch Is Not Entitled To "Jurisdictional" Discovery.

Monarch next asserts that it is entitled to take depositions of Dobrovolskaya and the property manager to confirm "whether Dobrovolskaya lived at the service address" where she allegedly was served. [ECF No. 49 at p. 2] But Monarch's request is fatally flawed in several significant respects.

As a threshold matter, Monarch's cited authority, *National Association of the Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020), has nothing to do with insufficient service of process. Instead, that case concerned federal subject matter jurisdiction. Obviously, a defendant who has

been served and has appeared in a matter – as the defendants in *National Association of the Deaf* had – can be required to respond to discovery so that the Court may determine whether it properly has subject matter jurisdiction over the dispute.[1] But here, Dobrovolskaya's Motion to Dismiss does not challenge subject matter jurisdiction. Rather, it argues that Monarch has never properly served her (and thus has not brought her within the personal jurisdiction of the Court).

Second, Monarch's request in its Response to take what it characterizes as jurisdictional discovery is procedurally improper. *See Ganz v. Grifols Therapeutics LLC*, No. 21-82072-CIV, 2023 WL 5437356, at *5 (S.D. Fla. Aug. 22, 2023) (Cannon, J.) (finding plaintiff was not entitled to jurisdictional discovery where it never formally filed a motion and instead made a "cursory request" in its opposition to a motion to dismiss). Here, Monarch filed its complaint in state court on November 23, 2022, and thereafter was granted two extensions of time to serve Dobrovolskaya with process. [ECF No. 1-2 at pp. 7, 256-57, 350] When Defendant Journalism Development Network ("JDN") removed this action more than seven months later, on June 30, 2023, Monarch still had not served Dobrovolskaya. After removal, this Court granted Monarch two additional extensions of time to serve Dobrovolskaya. [ECF Nos. 29, 33] *At no time did Monarch file a motion to conduct discovery*.

Instead, as demonstrated in its Response, Monarch voluntarily chose to serve JDN with an interrogatory concerning Dobrovolskaya's whereabouts rather than filing a "motion to compel discovery related to Ms. Dobrovolskaya's location." [*See* ECF 49-1 (email from Monarch's counsel dated Oct. 19, 2023)]. JDN timely and truthfully answered the interrogatory, identifying

---

[1] Indeed, subject matter jurisdiction is something that can be inquired into at any time and, "[g]iven the importance of subject matter jurisdiction," "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits" of a lawsuit, as explained in another case relied upon by Monarch. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982).

5

Dobrovolskaya's last known address within its knowledge. [EDF No. 45-2 at p. 4] Thus, Monarch's assertion that it has been prevented from taking discovery is inaccurate and cannot justify its belated and improper attempt to do so now.

And finally, jurisdictional discovery is not warranted where there is "no genuine dispute on a material fact." *See Ganz*, 2023 WL 5437356, at *5 (internal quotation omitted). That is precisely the case here. Dobrovolskaya filed a sworn declaration establishing that she did not live at the address where Monarch tried to serve her and has not lived there for four years. [ECF No. 45-3] Monarch has not provided *any factual support* to rebut the declaration, despite having five weeks since it was filed to do so, and well more than a year since commencing this action. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1338-39 (S.D. Fla. 2016) (denying improper request for jurisdictional discovery where plaintiff was seeking to test the veracity of defendants' affidavit by gathering facts he should have had before "coming through the courthouse doors") (internal quotation omitted). Under such circumstances, this Court is fully within its discretion to deny Monarch's request to take depositions.

In sum, the Complaint should be dismissed as against Dobrovolskaya because Monarch has not served her in compliance with this Court's order requiring that service be effectuated by December 13, 2023. [ECF No. 33]

**II.     Monarch Has Not Complied With Section 770.01.**

Dobrovolskaya should be dismissed from this matter because she has not been properly served, but she should also be dismissed because Monarch failed to provide her with pre-suit notice as required by Section 770.01, Florida Statutes. Monarch contends that it has complied with Section 770.01 or that compliance is not necessary, but Monarch is wrong on both accounts.

It is beyond dispute that Monarch never in fact served Section 770.01 notice on Dobrovolskaya. The Complaint never alleges that Monarch served her with notice and the

6

Response likewise never states that Monarch did so. In fact, Monarch could not in good faith represent to this Court that it provided Dobrovolskaya with Section 770.01 notice.

Nevertheless, Monarch argues that the Court can ignore its failure to comply with Section 770.01 so long as Monarch's Complaint "alleges generally" that all conditions precedent to bringing suit have been satisfied. [ECF No. 49 at p. 4] But this is not exactly what the Complaint does. Rather, it pleads "[a]ll conditions precedent to the institution of this action have been satisfied or otherwise excused, *including the service of statutory notice on JDN and OCCRP pursuant to § 770.01 Fla. Stat*." [ECF No. 1-2 at p. 10, ¶ 27 (emphasis added)] In other words, the Complaint tacitly acknowledges the undisputed fact that Monarch never served Section 770.01 notice on Dobrovolskaya.

But such notice is statutorily required before suing Dobrovolskaya for defamation. Fla. Stat. § 770.01 (2023); *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950). Looking to avoid this statutory requirement, Monarch argues that it served Section 770.01 notice on JDN, the publisher of the website on which the allegedly defamatory Article appeared, and therefore it was not required to serve notice on Dobrovolskaya, the Article's author. [ECF No. 49 at 4] But this is plainly wrong because Florida courts "have held that reporters are protected by the pre-suit notice statute, just as publications are" and notice to employers "may not be imputed" to reporters. *Rendón v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1275-76 (S.D. Fla. 2019).

In fact, in *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376 (Fla. 4th DCA 1997), the Court expressly addressed the question of whether a newspaper's columnist – as opposed to the newspaper itself – was entitled to Section 770.01 notice and held that the columnist was so entitled. *Id.* at 1380. The Southern District of Florida Court reached the same result in *Barbuto v. Miami Herald Media Co.*, No. 21-cv-20608-BLOOM/Otazo-Reyes, 2021 WL

7

4244870, at *3 (S.D. Fla. Sept. 17, 2021), holding that an individual reporter must be served with Section 770.01 notice before she can be sued for defamation. Thus, the law is clear that Monarch was required to provide Dobrovolskaya with pre-suit notice, which it indisputably failed to do.

Monarch also argues that even if Dobrovolskaya was entitled to pre-suit notice, such notice was futile and unnecessary because Dobrovolskaya does not control the website on which the Article appeared, and therefore "it was not within her power to retract the article or make any corrections." [ECF No. 49 at 5] But this precise argument has already been rejected by Florida's courts. *See Mancini*, 702 So. 2d 1379 (rejecting argument that columnist is not entitled to Section 770.01 notice because only the newspaper has the authority to correct or take down an article). Monarch has not cited a single defamation case against an author holding that Section 770.01 need only be sent to the media entity that published allegedly defamatory material, and not to the actual author. That is not the law. Rather, as a matter of law, Dobrovolskaya was entitled to her own Section 770.01 notice, regardless of whether Monarch believes that providing such notice would have been futile.

Finally, Monarch asserts that Section 770.01 applies only to media defendants and argues Dobrovolskaya was not a media defendant when she posted her allegedly defamatory tweet. (While Monarch is not clear on this point, Monarch's argument applies only to Count III of the Complaint, the sole Count relating to Dobrovolskaya's tweet.) As shown in the Motion to Dismiss, however, Dobrovolskaya undoubtedly qualifies as a media defendant in connection with her allegedly defamatory tweet. [ECF No. 45 at pp. 15-16]

A media defendant is one "engaged in the dissemination of news and information." *Intihar v. Citizens Info. Assocs., LLC*, No. 2:13-cv-720-FtM-29CM, 2014 WL 842464, at *4 (M.D. Fla. Mar. 4, 2014) (internal quotation omitted). Thus, a media defendant is one who furthers "the free

8

dissemination of information *or* disinterested and neutral commentary or editorializing as to matters of public interest." *Comins v. Vanvoorhis*, 135 So. 3d 545, 557 (Fla. 5th DCA 2014) (emphasis in original).  In addition to the fact that Dobrovolskaya is a professional journalist who authored the allegedly defamatory Article, the specific tweet at issue in this case expressly involves the dissemination of news and information.  The tweet states:

> Monarch has a division called Mercury Jets which has no legal presence in the US. Mercury's website domain info shows it was registered by an eponymous company in Moscow and lists a contact email address of a Moscow-based commercial bank Sibcontact bank.

[ECF No. 1-2 at pp. 81]

This tweet – in which the reporter who wrote the OCCRP Article about Monarch relays additional factual and relevant information about the corporate structure of Monarch's Mercury Jets division – facially involves the dissemination of news and information.  Indeed, Monarch does not really try to argue otherwise.  Instead, Monarch seems to suggest that Dobrovolskaya is indistinguishable from the defendant in *McQueen v. Baskin*, No. 2D22-1482, 2023 WL 7929535 (Fla. 2d DCA Nov. 17, 2023), who was found not to be a media defendant.  But in that case, the Court found that Carol Baskin (owner of an animal rescue facility and featured character in Netflix's streaming series, *Tiger King: Murder, Mayhem and Madness*), who posted video of herself reading "her diary entries on a vlog about a former secretary whom she repeatedly accuses of embezzlement," was not a media defendant.  *Id.* at *9.  Those facts have no similarity to the facts here.  Under Florida law, Dobrovolskaya is unquestionably a media defendant.  *See, e.g.*, *Buckley v. Moore*, No. 20-CIV-61023-RAR, 2021 WL 3173185, at *5-6 (S.D. Fla. July 26, 2021) (defendant who published a blog about investment and trading products was media defendant); *Intihar*, 2014 WL 842464, at *4 (operator of "mugshotsonline.com" website was a media

9

defendant); *Comins*, 135 So. 3d at 559 (college student who ran "Public Intellectual" website was media defendant).[2]

Section 770.01 applies to statements made "in a newspaper, periodical, or other medium." Fla. Stat. § 770.01. Florida law is "well-settled" that publications on the Internet constitute an "other medium" for purposes of Section 770.01. *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267, at *8 n.12 (S.D. Fla. Mar. 16, 2015); *Intihar*, 2014 WL 842464, at *4 (website qualifies as "other medium"); *Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859, 861 (Fla. 5th DCA 2015) (journal published online qualified as "other medium"); *Comins*, 135 So. 3d at 549 ("other medium" includes the internet). Because Dobrovolskaya is a professional journalist and media defendant, her posts on Twitter are posts made in an "other medium," and are therefore governed by the notice requirements of Section 770.01.

Monarch's failure to provide Dobrovolskaya with mandatory Section 770.01 notice requires dismissal of its claims against her. Moreover, because the claims are now time barred, they must be dismissed with prejudice.

WHEREFORE, Defendant Dobrovolskaya respectfully requests that the Court enter an order granting her Motion to Dismiss and dismissing all counts of the Complaint against her with prejudice, and for such other and further relief as the Court deems necessary and proper.

---

[2] Monarch also contends that Dobrovolskaya's Twitter account was not primarily used for news purposes, but instead was used "to communicate personal matters, including self-promotion." [ECF No. 49 at p. 7] No Florida case holds that the definition of a "media defendant" turns on whether that defendant ever publishes personal information. More critically, Monarch provides no evidence to support its self-serving conclusion about Dobrovolskaya's Twitter account. In fact, the Complaint identifies and attaches only two tweets that Dobrovolskaya ever posted, and both of those tweets plainly provide news and information; they do *not* concern "personal matters." [ECF No. 1-2 at pp. 81]

THOMAS & LOCICERO PL

By: */s/ Dana J. McElroy*
Dana J. McElroy
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
Daniela Abratt-Cohen
Florida Bar No. 118053
dacohen@tlolawfirm.com
915 Middle River Drive
Suite 309
Fort Lauderdale, FL 33304
Phone: (954)703-3416

-and-

James J. McGuire
Florida Bar No. 187798
jmcguire@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Phone: (813) 984-3060

*Attorneys for Defendant Lily Dobrovolskaya*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **27th** day of **February, 2024**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ *Dana J. McElroy*
Attorney