# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                              :
                                         Docket #13cr268
UNITED STATES OF AMERICA,           : 1:13-cr-00268-JMF

                    Plaintiff,      :

   - against -                      :

ALIMZHAN TOKHTAKHOUNOV, ANATOLY     :
GOLUBCHIK, et al.,                     New York, New York
                                    : April 24, 2013
                    Defendants.
------------------------------------- :
```

PROCEEDINGS BEFORE
THE HONORABLE DEBRA FREEMAN,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For the United States    U.S. ATTORNEY'S OFFICE
     of America:         SOUTHERN DISTRICT OF NEW YORK
                         BY:  JOSHUA NAFTALIS, ESQ.
                         One Saint Andrew's Plaza
                         New York, New York 10007
                         (212) 637-2310


For the Defendant        LAW OFFICES OF JEFFREY LICHTMAN
Golubchik:               BY:   JEFFREY HARRIS LICHTMAN, ESQ.
                         750 Lexington Ave, 15th floor
                         New York, New York 10022
                         (212) 581-1001




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

3

THE CLERK: United States v. Anatoly Golubchik. Counsel, state your name for the record.

MR. JOSHUA NAFTALIS: Good morning, Your Honor, Joshua Naftalis for the Government. With me is Special Agent Robert (inaudible) from the FBI.

MR. JEFFREY LICHTMAN: Good morning, Your Honor, Jeffrey Lichtman and Jeffrey Einhorn for the defendant.

MR. JEFFREY EINHORN: Good morning, Your Honor.

THE COURT: Good morning. Just give me a moment to take a look at the Pre-Trial Services service because I just, I'm getting it now. So give me a sec.

(pause in proceeding)

THE COURT: It's a lengthy indictment. Tell me which counts this defendant is charged in and what he's charged with.

MR. NAFTALIS: Yes, Your Honor. The defendant is charged in count 1 which is the RICO conspiracy, the RICO (inaudible) count is count 2, and money laundering conspiracy count which is count 5 I believe. 7.

THE COURT: I'm just flipping through. I see his name elsewhere as well – 18 – all right, well, I gather this is here for a bail hearing --

MR. NAFTALIS: Yes, Your Honor, Judge Furman has referred it in the first instance to Your Honor.

THE COURT: Has he been presented?

4

MR. NAFTALIS: Defendant was arrested last Tuesday. At the presentment, his counsel who was, just for that appearance, consented to detention. And then is the first argument that (inaudible).

THE COURT: Okay, so he doesn't need presentment. It's just for a bail hearing.

MR. NAFTALIS: No, he's been arraigned as well.

THE COURT: Okay. All right, so tell me a little bit about – I gather there's going to be an argument here, so tell me a little bit from the Government's side as to why you think detention is the right way to go.

MR. NAFTALIS: Yes, Your Honor, as I mentioned, the defendant was arrested last Tuesday. He is part of a 34-defendant indictment. He is at the very top of this indictment. It's a RICO, RICO conspiracy, money laundering, illegal gambling, extortion charges against the defendant.

The defendant is charged – the two people above the defendant are a man named Taiwanchik who is a fugitive in Russia, and Adine Trincher. Adine Trincher, Mr. Taiwanchik, and Mr. Golubchik ran a RICO enterprise. Last Tuesday Mr. Trincher made a bail application, and Judge Francis ordered him detained. Respectfully, (inaudible) did not make an application there; the writing was on the wall. Mr. Golubchik is in the exact same position as Mr. Trincher. They are charged with the same crimes.

5

They are two of the three of this massive RICO enterprise which was an international gambling operation, and the exact same facts apply to each defendant, and I'll go through all of them. But we believe that he should be detained as well.

THE COURT: You're arguing on flight grounds?

MR. NAFTALIS: Flight and dangerousness.

THE COURT: Okay.

MR. NAFTALIS: So I'll give you a general background of the case because I know this is your first exposure to it.

There are two RICO conspiracy charges. One is called the Taiwanchik-Trincher organization and then there's another organization. The Taiwanchik-Trincher organization is an international gambling organization. They were running a huge, large-scale sports book illegally. Their clients were multi-millionaires and billionaires, oligarchs in Russia. The money was then laundered --

THE COURT: I'm sorry, I just heard Russia.

MR. NAFTALIS: Oligarchs in Moscow, in Russia. The money was laundered through cyclers into the U.S. We've traced at least $40 to $50 million alone just through this organization that Mr. Golubchik is affiliated with. There are also extortion charges related to this and then illegal gambling charges.

6

So let me address, first, dangerousness to the community. As I mentioned, extortion charge. Mr. – his nickname is Taiwanchik, is what's referred to as a vor. This is the top of the top of the top of organized crime in Russia. He is known to be a criminal. He openly operates – he provides protection to people. He affiliates with the highest levels of Russian government.

MR. LICHTMAN: Excuse me, Judge, we're talking about not this defendant, but the top defendant in the case, Your Honor.

MR. NAFTALIS: Yes, the coconspirator with Mr. Golubchik.

MR. LICHTMAN: Sorry.

MR. NAFTALIS: Just to be clear, there are massive amounts of wiretaps, email intercepts. The defendant is in continual contact with Mr. Tokhtakhounov, Taiwanchik, which is why I mention him. He is able to extort money, payment through the fear of force and use of force.

THE COURT: When you say he, could you keep me clear as to who you're talking about.

MR. NAFTALIS: Okay, Mr. Tokhtakhounov who is the top name on the indictment.

THE COURT: All right, so you talk about that person, then when you shift and you start talking about this defendant, then you'll let me know.

MR. NAFTALIS: I will, yes.

THE COURT: Okay.

MR. NAFTALIS: Mr. Golubchik, Mr. Tokhtakhounov, and Mr. Trincher are the three leaders of this RICO conspiracy. They're all charged with extortion, money laundering, RICO, illegal gambling.

THE COURT: And all I'm saying is you're talking about one, I'll give you leave to be saying he this, he that, he the other thing, as long as I know you're still talking about that person.

MR. NAFTALIS: Yes, Your Honor.

THE COURT: Then if you shift gears and you're talking about someone else and saying he, make sure I get it.

MR. NAFTALIS: I will, Your Honor.

THE COURT: Okay.

MR. NAFTALIS: The defendants are charged with extortion. Part of the extortion relates to working with Mr. Tokhtakhounov to extort money in fear of force and use of force. As Your Honor is aware, the Second Circuit has made clear that being a leader of a criminal enterprise satisfies the dangerousness prong as well.

As I mentioned, the defendant is caught on numerous intercepts with Mr. Tokhtakhounov, including discussions about extorting money through the threat of force. We believe that's dangerousness. This is an international conspiracy

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 9 of 49
Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 8 of 48

8

that uses fear from this very high level person to get people to pay.

With respect to risk of flight, the defendant himself has set forth in the Pre-Trial Services report has extensive connections to the Ukraine, Russia, France, and Israel. He's a dual citizen I believe of Israel and the United States. If he were bailed, we believe he would run.

He has close connections, as I mentioned to Mr. Tokhtakhounov who is a man of immense wealth and power in the former Soviet Union who can easily help him hide. Mr. Tokhtakhounov has been under indictment publicly since 2002 and living freely. He is also an Israeli citizen, meaning Mr. Golubchik, and Mr. Golubchik owns property in France. He was arrested soon after coming back from a long international trip from France and Israel, and he spends substantial amounts of time, for example, in Monaco as well.

We believe that if he is bailed, he will leave and go, use the protections and money afforded to him by the other members of this conspiracy to leave the United States.

As I mentioned, this is a large-scale money laundering operation. As you can see, just from what he's revealed to the Court, has a large amount of assets. He personally has been involved in laundering tens of millions of dollars from Russia to shell accounts in Cyprus into the United States. We believe that there is money, we've already

Case 2:13-cr-00268-JMF Document 208 Filed 05/29/13 Page 3 of 48

9

seized money in Cyprus that belonged to this organization, and there is much more over there we believe.

His access to funds is so great that, for example, he and Mr. Trincher provided payment to Mr. Tokhtakhounov, the vor, of $10 to $12 million in a few-month period simply for Mr. Tokhtakhounov providing his services which are effectively to extort payments from people.

The defendant lists as his employment on the Pre-Trial Services report Haggert Realty. This company is a complete fraud. It is used to launder money. It is the shell company where the money that is laundered lands in the United States. As I mentioned, the money starts in Russia. They move it here for safekeeping we believe. It goes through shell accounts in Cyprus. Sometimes it goes directly to Mr. Golubchik, sometimes it goes into Haggert Realty, and that money is washed through this real estate company so it comes out, for example, as rental (inaudible). It used to be illegal gambling money. It now comes out as rental payments, hedge fund dividends, for example.

Another example to access to cash overseas, during our investigation we've learned of Mr. Golubchik being involved in picking up cash in Kiev. This is an international organization with close ties overseas and large amounts of money at his disposal.

As Your Honor noted, he's charged in many counts.

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 11 of 49
Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 10 of 48

10

He faces up to 90 years of prison. We have unbelievably strong evidence again the defendant. As I mentioned, there are Title III wiretaps, there are search warrants of email accounts, massive bank record discovery; over 360 bank accounts we've been through. We believe that we have more than a solid case against the defendant.

Finally, and this relates to both the money laundering and risk of flight. The defendant has an ownership interest in two companies, one called Skyway, one called Monarch. These are airplane companies. They have a legitimate purpose in that they are airline companies. They were also used to wash money in the United States.

Owning an airplane company allows you obviously to leave quite easily. The airplane company not only was used for laundering money; in 2011 Miami customs discovered 16 kilos of cocaine on one of these planes. We do not believe this business is legitimate. Realistically it is used to launder money and it provides him the opportunity to flee.

And, finally, just in terms of – to come back to where the defendant's codefendant Mr. Trincher stands, he was detained on these exact same arguments by Judge Francis. We see no reason why he should be treated differently, and we're obviously happy to answer any questions about the facts. I know this is all coming to you. Poor Judge Francis had the privilege of presenting 20 defendants, he got pretty familiar

11

with these facts.

THE COURT: When you say the facts are identical to the facts on which basis someone else was detained, I'm assuming different people have different kinds of ties to different countries. You're saying the other person who was detained was very similarly situated?

MR. NAFTALIS: Yes, foreign ties, ability to access funds overseas. He has ties to the Ukraine, Russia as well. He has access to millions of dollars as well. He is equally in contact with Mr. Tokhtakhounov. He is also charged with extortion. He faces the same amount of jail time, 90 years. They are charged in identical accounts in the indictment. And they, as alleged in the indictment, are the two of the three, meaning Mr. Trincher and Mr. Golubchik are two of the three leaders of this RICO conspiracy. Thank you, Your Honor.

THE COURT: Counsel.

MR. LICHTMAN: Good morning, Your Honor. First of all, as the prosecutor said, comparing Trincher to the defendant, obviously the circumstances should not be identical because there are factors in 3142(g) that specifically relate to each individual. So, yes, they're charged in some of the same crimes; they're not charged in the exact same crimes in the indictment to begin with.

Also, what the prosecutor didn't mention is that Mr. Trincher, when he made his bail application, from what I

Case 1:23-cr-00268-JMF Document 200 Filed 05/29/13 Page 12 of 48

12

understand, did not put forth a package, did not put forth a package that was arguing these issues and did not set forth a package. The law is clear, it's their burden on both dangerousness and with regard to flight, and it's got to be, at least in terms of dangerousness, where there's clear and convincing evidence that there are no conditions or combination of conditions which will reasonably ensure the safety of the community. When you don't put forth a package of conditions, it's a little difficult for a judge to be able to make such a determination.

So to compare the two and say that they're identical and say that there's some sort of precedent that was set in that last bail hearing makes no sense based on 3142(g); it makes no sense based on the fact that there are different charges in the indictment with each one; and the fact that there was no attempt even made to discuss a bail package which would ensure both the appearance and the safety of the community. That's the first thing.

Clearly, the Bail Reform Act says that bail should be granted except in most extraordinary circumstances. Only a small number of people should not be getting bail. Let me start with flight, if I can, Your Honor. Let me just also, if I can, talk about the package that we're willing to put up. You should also note that this man has no criminal record. He has no family abroad. He's an American citizen for 15 years,

13

lives in this community with his wife who's here, two children, one is an eight-year-old daughter.

In addition, the homes that we're willing to put up, we're asking for a $3 million bond, Your Honor, secured by two properties. One is the family home which houses his son, his eight-year-old daughter, and his wife. The other home is in Brooklyn and houses his mother-in-law. In addition, we have four financially responsible cosigners. One is a doctor, one is an NYU project manager, an accountant. We have people that are willing to put their lifesavings on the line for this defendant.

In addition, we are offering home confinement with electronic monitoring. These are all things that were not discussed in Mr. Trincher's bail application. So I would submit on its face at least there's quite the difference.

Now, if we can talk about the flight risk argument. This is not Bernie Madoff or Mark Dreier. You heard the prosecutor, with all respect, struggling to distinguish between the top of the indictment, a man who's been under indictment since 2002, and the defendant. The fact is they are completely different people. This is not a Dreier or a Madoff who had exponentially the amount of money at their fingertips than this defendant is alleged to have. This isn't someone who's been accused of engaging in fraud like those two, who has a track history of lying. We haven't heard

Case 1:13-cr-00268-JMF Document 200 Filed 09/29/13 Page 14 of 48

14

anything about any fraud. We also haven't heard anything about fabricating any documents or fabricating any identifications. Or when he was arrested, there weren't multiple passports in different names with his picture on it. None of the indicia of someone who is willing to fly.

Instead, we've got someone who's got family, a long history in the community, and an eight-year-old daughter, Your Honor. With no family abroad, again. This is not someone who has shown any ability or propensity to fool people at a very high level the way a Madoff and Mark Dreier have, who has a history of lying to the SEC or other governmental agencies.

Now, Madoff and Mark Dreier were ultimately determined to not be flight risks to the point that there were conditions that could guarantee their safety, and sure enough that did occur, despite their massive international travel, homes, and assets in other countries.

Now, as noted before, the Government has to show that the defendant poses an actual risk of flight, an actual risk of flight. But based on what? He's Russian. He's got connections with somebody, a shadowy person on top of the indictment who's been a fugitive, been under indictment since 2002. He travels a lot, has international resources. But they can show you nothing that shows he's an actual flight risk. What can they point to? Can they point to the identifications? Can they point to lying to the government?

Can they point to anything like that? Can they point to the fact that he ever lied to a court or didn't show up when he was supposed to? No, because he's never even been arrested, Your Honor.

And, in addition, with regard to the fact that he's an Israeli citizen as well, dual citizen, he volunteered his passports when he was arrested. He gave them up. They have them right there.

Now, even if the Government could show that he poses an actual flight risk, they have to then show that there are no conditions, no conditions or a combination that would reasonably, reasonably assure his presence in court. Well, what about house arrest with electronic monitoring? Does that just get discounted? We don't even discuss it? We just go right from A to Z and remand? Putting up his home where his family and his young child live and where his mother-in-law live? And what about the cosigners on the bond? We just discount them? That's moral suasion, Your Honor, that keeps the man in the country, in addition with the electronic monitoring. And, Your Honor, we're willing to agree to a GPS monitoring as well, not just the regular ankle bracelet. We're willing to agree to GPS as well.

Now, if I can, Your Honor, I'm going to compare a couple of cases recently in the Southern District of New York for precedential value which I believe actually has at least

16

as much relevance to someone who didn't even put forth a bail package previously.

Chan Min Fang was charged at the end of January in this courthouse and appeared for bail in this courtroom. He was charged with involvement of $1.7 billion accounting fraud in the Southern District, as I said. Judge Swain granted him bail even though he was, A, a citizen of Taiwan, B, lived in Singapore, and made $10 million in the scheme and had that kind of money.

Mr. Golubchik, on the other hand, has been an American citizen for 17 years, lives in Jersey, as repeatedly noted, with his wife and two children, one being the eight-year-old daughter, and has no family abroad, and is not charged with lying or any other fraud. And the lying and the fraud I think is important because it goes to trustworthiness to respect the government and to respect the Court's order.

In addition, we have a Varujan Amroyan. Judge Fox granted him bail. He was an Armenian citizen who was a member of a violent organized crime enterprise which used quote, and I'm taking from their press release, "violence and threats of violence to ensure respect for and payments to its leadership." There was a RICO charge in that case which included $100 million Medicare fraud as one of the charges.

Members of the conspiracy were alleged to have threatened to "disembowel a criminal associate who owed

money." There were also discussions of killing an associate who failed to show the proper respect. As for this Amroyan, besides not being an American citizen, he had a massive criminal record, unlike this defendant.

First, he committed the offense while he was on probation on another conviction, which showed a lack of respect obviously to court orders, Your Honor. He was convicted of making a false statement on a currency transaction report and served time in jail. Again, lying. Don't have that here.

He was also convicted of lying on his tax returns. We don't have that here either. Fraudulent credit cards, we don't have that either. All of these crimes obviously show dishonesty. In addition, you have the fact that he had no respect for a court's order.

He used aliases in connection with the crimes he committed and was found in possession upon his arrest of identification documents with his pictures on them but with other names. And he was arrested with fake credit cards. That's an actual flight risk because you're seeing someone who has clearly made attempts to be ready to run. We have none of that here. None of that here. Zero, nothing. Nothing.

Now, you look at the difference in the case before you, as I said, he's an American citizen. There's no allegations of fraud. This, in essence, is a gambling case.

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 13 of 48

18

This is a gambling case with a charge, a couple of charges of extortion of which he's charged in one extortion conspiracy. And I'm not going to get to dangerousness just yet, or maybe I will a little bit.

There are actually specific extortions in this case – client 1, client 2, client 3. He's not charged with involvement. I believe the Trichner, the other fellow with the identical charges, except that they're not, was actually charged with one. He's not charged with any specific extortion.

Basically, what the claim is this, Your Honor, he's part of this massive criminal organization that used fear to get people to pay the debts from gambling. Well, if he's released, who's betting? What evidence has there been shown that this organization obstructs justice or that hurts people for any other reason other than attempting to get paid? Are there any allegations of guns being used and anybody being hurt, of weapons being brandished? No, just a lot of smoke and mirrors. There's something there, I'm not discounting it, but it's not to the level that there are no conditions which could possibly assure, reasonably assure the safety of the community and it's not a surprise that Pre-Trial Services came back and recommended bail, Your Honor.

Now, as I said, none of the red flags exist in those other cases that I've cited, and the Government has also

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 19 of 48

19

frozen multiple bank accounts of this defendant.  All of his money in America has basically been frozen; over a million dollars has been frozen.  Properties have been frozen.  So that certainly, in addition, negates his ability to run.  It does.  It's a fact.

Now, with regard to the danger argument, I touched on it a little bit, they have to show by clear and convincing evidence, again, that there's no condition or combination of conditions that would assure the safety of the community.  Again, he's one of the heads of a large betting ring, but as I said, no violence has been alleged in the indictment and not against him specifically, and that's important.

In addition, there is no allegations of obstruction.  You have organized crime after organized crime case, Your Honor, in which defendants are bailed.  Tons.  I would be here until tomorrow if I gave you a list.  I've represented many of them.  That is an organization, the mafia, in which violence is part of everything.  Obstruction of justice, there is not a single organized crime family in this area that there have not been allegations by a prosecutor in a bail hearing in which they've said they have obstructed justice, they have gone to jurors, they have killed witnesses.  There is no allegation about that here, nothing.

This is a large-scale, allegedly, betting organization that laundered tens of millions of dollars.  You

Case 1:13-cr-00268-JMF Document 200 Filed 09/25/13 Page 20 of 48

20

can't compare that to an organized crime family that has as one of its mechanisms getting rid of witnesses, obstructing justice, going to jurors. You can't compare these two organizations; they're simply not the same.

Now, if I can, Your Honor, I would bring up the DeFranco case, an organized crime case in January 2013 in which bail was granted to a number of defendants, and, again, there was violence charged, there was RICO charged with respect to the Genovese family in which obstruction of justice has routinely been employed. Not a single mention of that here.

So, Your Honor, what I would say, again, the fact that we've got a significant bail package, which is completely different than what the defendant who was denied bail, who will be making another bail application, Judge, this time perhaps with a package to present -- $3 million bond, secured by the two family homes. All of his relatives in the area live in these two homes. Both of those will be posted.

Home confinement with strict electronic monitoring. He can only leave to come to his lawyer. He can wear a GPS, Judge, which would ratchet up the level of detection by the Government not just the bracelet.

Four financially responsible cosigners of the bond. They're here. We could probably get more. I could probably have five or six that are here right now. I offered four. If

21

Your Honor thinks it's better, we can have more.  All travel documents have already been voluntarily turned over.

And I would say to Your Honor this, there was mention about a plane company.  The plane is shut down.  The Government neglected to mention that.  Doesn't exist anymore.  The fact that there was cocaine that was found on the plane, was there any allegation t++hat it was to people that had ownership interest in the company?  Because if that's the case, every time you have a private plane company and some criminal takes a plane and moves cocaine with it, what, they arrest the person who owns the company?  No, it's the person who rents the plane.  Where's that charge?  It doesn't exist.

It sound good on its face, Judge, but when you actually peel it back and you put them to their burden, clear and convincing evidence with regard to danger, that no conditions can reasonably assure the safety of the community, and that by a preponderance of the evidence that there is no reasonable probability that he will show up in court, you know, just does not pass muster when you consider the significance of the package that we have here.  Thank you.

MR. NAFTALIS:   Your Honor, briefly.  This is a release hearing case.  The defendant faces 90 years of jail.  There's money laundering, there's extortion.  The defense counsel is just wrong.

The defendant is charged in count 1 with

22

racketeering Act 2 with extortion, and count 8 with extortion. The --

THE COURT: I'm sorry, what was counsel wrong about?

MR. NAFTALIS: He said that there was no - the defendant's not charged with any extortion. I did say --

MR. LICHTMAN: I didn't say that. I said a specific victim was not named. There are specific victims named as extortion victims in this case. I said he was charged with extortion conspiracy, which is what he is.

MR. NAFTALIS: I don't understand the difference. But, Your Honor, the defendant --

THE COURT: Well, I haven't --

MR. NAFTALIS: The defendant is charged with extortion.

THE COURT: I haven't been through this indictment. I'm new to this case. So tell me this, apart from naming this defendant in conspiracy charges, can you give me some idea of what you have that describes this individual's particular conduct that should sound particular alarms for me regarding his danger to the community? In other words, sometimes I have, well, this person's role was to do this, this was the person who would go with a gun to somebody and put the gun to their heads. You know, this person was the person who would do something else in connection with an overall conspiracy.

Case 1:23-cr-00268-JMF Document 200 Filed 05/29/13 Page 23 of 48

23

So if you have particular, any particular proffer to make as you chose about this particular person's role that would make him a particular danger other than being a coconspirator, which I understand he can be in a number of ways, maybe you can expand.

MR. NAFTALIS: The answer is, notwithstanding the defense counsel's suggestion that this man is not at the top of the indictment, he is at the top of the indictment. He and the three people at top direct people below. He is, as an example, on the wire, he is caught speaking to Mr. Tokhtakhounov about Mr. Tokhtakhounov saying, you know what, this guy owes us some money. I'm gonna make him give us a car too because he's so afraid of me that they're gonna pay us more, that they will threaten him to pay more than the debt owed, and the two of them are talking about this (inaudible).

There are people working below Mr. Golubchik who are the enforcers, the collectors. The suggestion that since you're at the top, you're not danger puts it on its head. If you're the people directing the collection, you're just as dangerous, which is why he is charged with both extortion and conspiracy --

THE COURT: Is it your understanding that this defendant was acting from within the confines of his home by phone perhaps or computer to direct conduct of others in other places?

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 24 of 48

24

MR. NAFTALIS:  Yes, Your Honor, he has two to three apartments in the New York area, he worked almost exclusively from there is what we understand.  So if you lock him in his house with his computers, he's gonna be in continual contact with anyone.  Because he doesn't have a real office; his job is to commit crimes.

THE COURT:  Is it your understanding he worked by phone?

MR. NAFTALIS:  He worked by phone and compute and Skype.  With respect to the list of precedents that the defense counsel was laying out, this is not a fraud case, he's right; this is an organized crime RICO case.  This is not a Dreier case; this is a man who associates and is an associate with a RICO enterprise.

I could list a number of people who are bailed by this court.  You know does this every day.  The person in the exact same or the most similarly situated situation is Mr. Trincher.  And there was a bail argument that was hotly contested, and Judge Francis ordered him remanded.

In addition, there are no -- what defense counsel points out, there are no indicia of flight.  There are indicia of flight.  Do I not have a fake ID right now?  No, but it's very easy to get.  He has lied to Pre-Trial Services.  He does not list all his assets, for example, and just as an example, he owns apartments in New York.  It's not listed there.  There

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 26 of 49
Case 1:13-cr-00268-UMF Document 200 Filed 03/25/13 Page 25 of 48

25

was a search warrant on one of his New York residences.  It isn't even here.  I withdraw that, it's listed as Haggert which is the shell company that they laundered the money through.

I should say there's another company called --

THE COURT:  I'm sorry, what's listed as what?

MR. NAFTALIS:  His assets include New York City properties.  They're not listed in his financial assets.

THE COURT:  You're looking at a financial affidavit?

MR. NAFTALIS:  I'm looking at --

THE COURT:  Or the Pre-Trial Services report?

MR. NAFTALIS:  -- page 2 of the Pre-Trial Services report.

THE COURT:  So when you say something is listed as something, what're you talking about?

MR. NAFTALIS:  I said he doesn't disclose as asset being his homes in New York.  The Agent Hanratty points out that he does list the address as the address of Haggert Realty.  The address, as you'll note, for the business is an apartment because he runs this shell company, his money laundering vehicle out of his homes.

There's another company which is extensively noted – I know Your Honor is, it's a very long indictment.  There's a company called Villanova Properties which is an American-based

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 26 of 48

26

real estate company that Mr. Golubchik operates with the other lead defendants to launder money. That is another huge vehicle the defendant uses.

The suggestion that he's not – that you can create a package to keep him here is made by every single defense lawyer who wants his client bailed. And he did not address a single fact --

THE COURT: Well, some are bailed and some are not bailed.

MR. NAFTALIS: Some are bailed and some are not. He did not address a single fact related to his client. For example, his relationship overseas with Russia. He simply said people are bailed and you can create bail conditions that keep you home. That argument, while that argument works when there are facts that support it, there are no facts here, Your Honor, respectfully, that make this defendant any different from Mr. Trincher, and the arguments that he is not an insider trader or a ponzi schemer just have no weight here.

He is a dangerous man. He is charged with extortion which none of the defendants in the Dreier example obviously were charged with. Those men are at the top of the indictments because they were charged alone I believe. I just don't see anything – it's a clear case in the Government's position for remand. The Government only sought remand in a couple of situations. We were very conservative. Thirty-four

Case 1:13-cr-00268-JMF  Document 200  Filed 05/29/13  Page 27 of 48

27

people charged, 33 arrested, the one fugitive being Mr. Tokhtakhounov.  We sought remand with respect to Mr. Trincher.  He was remanded.  We sought remand with two others.  Both of them are detained until they meet their bail conditions.  With respect to 90 percent plus, we --

THE COURT:  I'm sorry, you sought detention for a few people, two of whom conditions were set, for two of whom conditions were set, but they haven't met the conditions yet, one of whom was remanded?

MR. NAFTALIS:  One of them was remanded straight out; that's Mr. Trincher.  We sought detention with respect to another individual who is in a different part of this conspiracy who was actively involved in the extortion.  He is still remanded; his name is Mr. Azen.

THE COURT:  But conditions were set?  You just said that because they haven't met their conditions yet, suggesting conditions were set.

MR. NAFTALIS:  Yes, I mean that individual is in a different situation.  A million dollars' bond, four cosigners --

THE COURT:  So judges have sometimes agreed with you and sometimes not agreed with you is what it sounds like, on the people you picked to push for detention.

MR. NAFTALIS:  Yes, I mean candidly yes, but with respect to Mr. Trincher, I did not hear defense counsel make

Case 1:13-cr-00268-JMF   Document 200   Filed 05/29/13   Page 28 of 48

28

any effort to distinguish (inaudible) other than the fact that they have different names.  They're in the exact same counts, except for this (inaudible) 3-1 where they extort an individual which --

(interposing)

THE COURT:  Okay, let me ask a couple of specific questions to each of you.  On defendant's side don't know obviously what's true and what's not true, but the allegation is that your client has used his phone and computer and Skype in order to be involved in illegal activity, including directing extortion activities and things of that nature.  If he were at a residence on electronic monitoring, what would we do about his access to phone, computer, Skype, and so on?

MR. LICHTMAN:  Your Honor, that was the first I heard about it, that's why I didn't address it when we first, when I first started speaking.  Obviously, first of all, the computers have all been seized.  Secondly, no new computers --

THE COURT:  There's no computer in the home?

MR. LICHTMAN:  The computers in the home were seized upon arrest from what I understand.  No new computers would be purchased.  There would be no access to the internet.  The phones, if Your Honor would want the phones to be monitored, we would agree to that.  That takes away

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 29 of 48

29

nearly half of what was just said.  In addition, any other electronic monitoring that Your Honor deems is required we would agree with.

So I don't know how you're going to be able to claim with a straight face there are no conditions that would reasonably assure the safety of the community because of computers when computers are not going to be in the home.

If I can, Your Honor, just briefly, I don't want to go on, but to bring up the Dreier and Madoff cases, I was bringing them up on the issue of flight.  The fact that they weren't charged in a violent RICO case with extortion is of no moment to what the point I was making.  That was just on the issue of flight.

So, Your Honor, with regard to Trincher, again, what I would say, the reason why I brought that up is because there was a specific, specific crime charged against Trincher with extorting a specific person, and that was one of the differences.  We heard – he's not charged with any specific person being extorted.  He's charged with the conspiracy.  We even heard from the prosecutor, I don't have the benefit of these zillions of tapes.  Well, he's speaking on the phone with the head of the organization and the organization says I'm gonna do this, I'm gonna do that.  Well, we're still waiting to hear what is the allegation what he specifically said.

30

I'm not saying that that doesn't put him into a conspiracy. We're not arguing guilt or innocence now. We're arguing whether there are conditions or any combination of conditions which would reasonably assure the safety of the community --

THE COURT: Okay.

MR. LICHTMAN: -- and they've come up with zero now with two specific showings that they've tried to make. It just doesn't exist. The fact are conditions exist. We are willing to have the computers monitored. We're willing to have the phone monitored. He's putting up all the homes that the family lives in. Your Honor, I just don't think with a straight face we can say that the dangerousness that exists here exceeds the cases that I cited for danger, not for risk of flight. It just doesn't exist.

THE COURT: Wait a minute, where does this defendant live?

MR. LICHTMAN: He lives in Fort Lee, Your Honor.

THE COURT: He lives at the 900 Palisades Avenue apart --

MR. LICHTMAN: Yes, Your Honor.

THE COURT: -- home?

MR. LICHTMAN: With his wife and two children.

THE COURT: And what is the 330 East 75th Street --

31

MR. LICHTMAN:    Excuse me, Your Honor.

THE COURT:    The 330 East 75th Street property, that's not residential?

MR. GOLUBCHIK:    It's residential.  My wife use it because it's close to my daughter's school.

MR. LICHTMAN:    It's a residential property, Your Honor, that he owns as well.

MR. GOLUBCHIK:    It's close to my children, my daughter's school.

MR. LICHTMAN:    It's close to his daughter's school where she goes which is why they have that apartment there as well.

THE COURT:    I did take the Government's point that at least in the Pre-Trial Services report that's listed as the address of defendant's employer and not listed as an asset.

MR. LICHTMAN:    It's actually a rental, Your Honor, I just learned.

MR. NAFTALIS:    Just to clarify, he owns another apartment on East 76th Street which is not listed.  So he rents one on 75th but he owns one on 76th.  So the 76th one is the one that's not listed.

MR. LICHTMAN:    Your Honor, I don't have any --

THE COURT:    Let me ask a different question.  For Pre-Trial, GPS, what do you do and not do these days with

32

GPS monitoring?  Is that something that you've been doing?
I can't recall.

PRE-TRIAL SERVICES AGENT:  Yes, we're doing GPS, Your Honor.  But he would probably be supervised by the New Jersey office, and I believe that they do GPS as well.

THE COURT:  All right, and telephone monitoring, that's not something that you'd like to undertake.

PRE-TRIAL SERVICES AGENT:  No, we don't do that.

THE COURT:  So what do you do, if anything, if there is concern that a person may be engaging in unlawful activity by using a phone in their residence?  Are there any conditions you recommend?

PRE-TRIAL SERVICES AGENT:  We have no way of monitoring that.

THE COURT:  Does the Government sometimes do that?  Sometimes set up monitoring like with knowledge to the defendant?

MR. NAFTALIS:  I don't know --

THE COURT:  You don't know what they --
(interposing)

MR. NAFTALIS:  -- wiretapping.  (inaudible)

MR. LICHTMAN:  Your Honor, if I can, I've been involved in numerous cases in which the Government has monitored phone calls.  So I don't know if it's run through Pre-Trial Services, I wasn't aware, but I can tell you there

33

are cases in which the Government has the ability to monitor --

THE COURT: Yeah, it was my understanding Pre-Trial wouldn't do that. So if that is something to be done, it wouldn't be a condition set up and supervised by Pre-Trial. That would be something where consent would be given to the Government to monitor it if the Government wished to do so.

MR. LICHTMAN: Which we would agree to.

THE COURT: If the defendant owns a property on 76th Street, do you have an understanding of what the value of that property is?

MR. LICHTMAN: About $5 million, Your Honor.

THE COURT: Clear of?

MR. LICHTMAN: No mortgage, Your Honor.

THE COURT: Well, I may have some misrepresentations by the defendant then with respect to his net worth as that would essentially triple, adding that in would essentially triple the value that he set forward, just that alone, which gives me some pause. I mean you make a persuasive argument that conditions may be possible here, but I'm concerned that what sounds substantial, $3 million and two homes --

MR. LICHTMAN: Your Honor, that property has been frozen.

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 35 of 49
Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 34 of 48

34

THE COURT: Which property, the 76th Street?

MR. LICHTMAN: The property at 76th Street from what I understand has been frozen pursuant to an order, along with the properties in Florida have also been frozen. The Sunny Isle of Florida vacation home, that's been frozen. The only property that has not been frozen by the Government right now is alleged to be direct proceeds is the home in Fort Lee.

THE COURT: So the only one available to use as security would be the one in Fort Lee plus the relative's home?

MR. LICHTMAN: The one in Fort Lee which I think the asset value is incorrect, from what I've been told. In addition, the home where the mother-in-law lives as well.

THE COURT: What do you think the asset value is of the home in Fort Lee?

MR. LICHTMAN: 1.7, and the property in Brooklyn is 400,000. And we've also got the four cosigners. I'm willing to up the amount of the bond which would lock in the cosigners as well for that higher amount.

THE COURT: You're willing to up it to what?

MR. LICHTMAN: Ten million?

THE COURT: Well, all right, I have a lot of things on the calendar today, so I think I need to bring this to an end. Both counsel are right that sometimes the

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 36 of 49
Case 1:23-cr-00268-JMF Document 200 Filed 09/25/13 Page 35 of 48

35

court has released people with substantial assets and ties to other countries, with stringent conditions generally, and sometimes the court has not. I mean just because someone has a lot of money and a lot of contact to other jurisdictions doesn't necessarily mean that conditions cannot be set if they are sufficiently stringent, and I think that defendant's counsel was pretty persuasive here that conditions can be set. But I'm going to set conditions that are very significant, and I'm going to require that all conditions be satisfied prior to release.

If defendant is willing to have a $10 million bond and if defendant thinks that he can get cosigners for that, I'm going to go for that. It seems that with the potential underreporting of assets, erring on the side of a higher bond is sensible.

MR. NAFTALIS: Not to revisit it, but in addition to not disclosing his home, he has substantial real estate assets which is (inaudible) not disclosed either.

THE COURT: Ten million dollar bond with cosigners seems to me quite substantial. Given the amount of this bond, we're going to have five cosigners, secured by, I can either do it by a dollar amount of equity in property or I can list particular properties.

MR. LICHTMAN: (inaudible)

THE COURT: In terms of security, for property I

36

can either say secured by at least X amount in equity or I can say secured by particular properties.

MR. LICHTMAN: I would ask that the two different properties, Your Honor.

THE COURT: All right, give me the two addresses again, 900 Palisades Avenue is one?

MR. LICHTMAN: 900 Palisades Avenue in Fort Lee, New Jersey.

MALE: It's 100 Ocean Drive West in Brooklyn, New York.

MR. LICHTMAN: It's 100 Ocean Drive West in Brooklyn.

THE COURT: All right, I'm going to indicate home detention, I'm sorry, home incarceration rather. That's lockdown. Home incarceration with electronic monitoring and GPS. I'm going to indicate strict Pre-Trial supervision. You said passports were already surrendered. You may not apply for any new passport at this time. To the extent that there's any reason to leave the residence, that would be only with permission of Pre-Trial Services and only to the Southern and Eastern Districts of New York and the District of New Jersey, assuming that that is where you are staying. But this is not – home detention is you can leave to go to work and otherwise your home. This is your home and nowhere else, except with specific notice to and permission of Pre-

37

Trial Services.

MR. LICHTMAN:  Does that include medical and legal visits, Your Honor?

THE COURT:  Well, I think Pre-Trial Services can be notified.  Whatever goes along with home incarceration, how does that generally work?

PRE-TRIAL SERVICES AGENT:  Yeah, he would be allowed out, after confirmation, he would be able to --

THE COURT:  For a lawyer visit or a medical visit?

PRE-TRIAL SERVICES AGENT:  For (inaudible) and for medical.

THE COURT:  But you need confirmation, Pre-Trial Services needs confirmation as to what's happening.

PRE-TRIAL SERVICES AGENT:  Correct.

THE COURT:  All right.

PRE-TRIAL SERVICES AGENT:  Your Honor, could you also travels to New Jersey since --

THE COURT:  I did say New Jersey.  I'm just taking a look for a moment at my notes.  My understanding is there are no computers currently in the home, that would include not just a laptop computer or a tablet, blackberry, things that are, you know, things that have computing capability.  If that's not correct, I'd kind of like to know what there is so we know what kind of access there is.

38

Computers can be small and computers can be large.

MR. LICHTMAN: That's a good point, Your Honor. Would that ostensibly include like a smart phone if a son who lives in the home, all their phones would --

THE COURT: Well, would everyone who lives in that home be willing to, on a voluntary basis, have the Government monitor calls if the Government wished to do so?

MR. LICHTMAN: Yeah, Judge, I think that's fine.

THE COURT: So no new computers without raising it with the Government first and getting leave of court.

MR. LICHTMAN: And, Your Honor, if I can just to sort of put it out there so I don't have to come back, I don't know what the schooling situation is for the children. So if there needs to be computers used for the kids, we would obviously go to the Government first and give them access to anything on that computer, the ability to search that computer whenever needed. But I wouldn't obviously do it until we went to the Government --

THE COURT: You said as far as you know all the computers in that home have been seized?

MR. LICHTMAN: Correct.

THE COURT: All right, so the record will reflect that. I'm saying no new computers without notice to the Government and leave of court. So you can explain the situation to counsel, you can write to the court, you can

Case 1:23-cr-00268-JMF Document 200 Filed 03/29/13 Page 39 of 48

39

write to me since I was the one who did the argument. Remind if I say I should go to the duty person that I said that. And investigate the situation with smart phones, raise with the Government if you see any issue, get back to me if you see any issue.

I'm indicating voluntary – I'm sorry – defendant and family, based on your representations, consent to Government monitoring of all phones in the home. If that's not right, once again, please raise it.

MR. LICHTMAN: That's fine, Your Honor.

THE COURT: Pre-Trial Services recommends prohibition from gambling. Now, if he's home, he's not going anyplace with his gambling. If he's not online, he's not gambling online. So I'm not sure that that is needed as a condition. I'm not sure the issue here is really his gambling as the Government has described it. So I'm not going there.

All right, let me just say this to – yes.

PRE-TRIAL SERVICES AGENT: You also mentioned too, I thought before you – that (inaudible).

THE COURT: I've got no computers. So without computers how do I have the internet access? Should I say specifically --

(interposing)

PRE-TRIAL SERVICES AGENT: Well, I was thinking

that's, you know, I'm not saying that this is something that this defendant would do, but you say no new computers, it's really hard for us to actually monitor that condition if, you know, (inaudible) --

THE COURT: What would you suggest?

PRE-TRIAL SERVICES AGENT: -- nowadays.

THE COURT: Right, what would you suggest for language? No internet access?

PRE-TRIAL SERVICES AGENT: (inaudible)

MR. NAFTALIS: Your Honor, on the monitoring, as you might imagine, this is a massive --

THE COURT: Hang on just one second. No internet access in residence, again, without notice – the reason I'm putting in without notice to Government and leave of court is there may be other people in the home, including children, who have school assignments or something. It may be easy enough to deal with if they go to a library or something, but they may have computers even issued by schools, who knows. So just raise it with each other if there is an issue and see what you can come up with.

With respect to monitoring, I'm not requiring phone monitoring. What I'm saying is that if the Government wants to take that step given his professed importance in this activity and his leadership role that you've described in this activity, that from what I understand from

41

defendant's counsel, there is permission for you to arrange for monitoring of these phones if you wish to do so.

MR. NAFTALIS: Is he allowed to us the phone and allowed to use the computer but we have to monitor it because --

THE COURT: Well, I don't have - as far as I know, there's no computer.

MR. NAFTALIS: Okay, but --

THE COURT: So we're talking about a phone.

MR. NAFTALIS: -- that he should be directed not to use a computer and no phones because the burden on the FBI to monitor all these phones and computers is a mess --

THE COURT: Well, I'm not sure that I can prohibit him from ever using a phone. If there's an emergency, medical situations, something else, I mean phones can be people's lifelines. I don't want to say he cannot touch a phone. I already have a situation where I'm being told there are no computers in the home and no new computers will be introduced into the home without it being raised and discussed and brought back to me.

But what I'm saying is that there may be other people in that home who have phones, who have cell phones, and you may decided that it's not worth pursuing or you may decide that it is, in excess of caution, to check in now and then and see what's going on on those phones. What I'm

Case 1:23-cr-00268-JMF Document 200 Filed 09/29/23 Page 42 of 48

42

saying is that as I understand it the family lives there are giving voluntary consent to having the Government check in on their phones if you wish to do that.

Now – all right.

MR. NAFTALIS:   But he shouldn't be using – my point is the fact they're allowed, potentially he's allowed to use them.  Like if he uses the kids' computers, that sort of obviates the whole – because then we have – does that mean --

THE COURT:   Well, I can certainly direct that to the extent that the defendant is permitted to use a phone, it should be only one phone, and he shouldn't be permitted to use his kids' phone, wife's phone, his mother's phones, other people's phones.  If he does, that's a violation.  But I don't want to deprive him entirely of the ability to make a phone call.

MR. LICHTMAN:   Could I make this easier, Judge?

THE COURT:   Yeah.

MR. LICHTMAN:   I think what makes sense is that there would be one phone for his use, that he's allowed to use, and that would be the phone that can be monitored, you can direct the Government that would be the one that he'd be using.  Other phones in the apartment, we've agreed to have them monitored, but he'll only use the one phone.

THE COURT:   Right, that's what I was just saying,

43

which was that, look, if he has a family in the home who has a separate phone, the Government, Pre-Trial Services can't have eyes on him all the time to know that he didn't say to the family member, hey, let me borrow your phone. Right? So if the Government wishes to monitor those other phones on a random basis to make sure that he's not using them full-time basis, random basis, anything the Government wished to do, I understand that there is consent by these other family members to let the Government do that.

But I'll set the condition that there be only one phone that defendant is supposed to use, to the extent he's using his phone, that he's giving consent for that one to be monitored too if the Government wishes, and it would be a violation of his conditions for him to be using anyone else's phone. So if he gets caught using someone else's phone, it's not only the Government says, uh oh, this is what's going on, but it's a violation of the conditions.

MR. LICHTMAN: Understood.

THE COURT: Okay? Okay, so here's what I've written, in addition to GPS monitoring, no new computers without notice to Government and leave of court. Defendant and family consent to Government monitoring of all phones in home. No internet access in residence without notice to Government and leave of court. Defendant to use only one designated phone to the extent he needs to use a phone. All

Case 1:13-cr-00268-JMF Document 200 Filed 05/29/13 Page 44 of 48

44

right?

MR. NAFTALIS: That's fine, Judge.

THE COURT: All right, Mr. --

PRE-TRIAL SERVICES AGENT: Your Honor, just to clarify.

THE COURT: Yes.

PRE-TRIAL SERVICES AGENT: Is Pre-Trial (inaudible) the internet access we ask that be removed from the house or --

THE COURT: I'm indicating no internet access in the residence. There should be no internet access in the residence.

PRE-TRIAL SERVICES AGENT: So we could get a letter from like Time Warner or from whoever his internet provider is stating that the internet is no longer at the house? Because that's usually what we do. I mean we get letters from the phone companies, you know, advising that there's no internet access or it's removed, you know, there's documentation --

THE COURT: Okay.

PRE-TRIAL SERVICES AGENT: Is that what --

THE COURT: Yes, you would agree to that?

MR. LICHTMAN: Yes, Judge. The only thing that I would say is that, again, with regard to the children --

THE COURT: Again, if there's something that you

Case 0:23-cv-61256-JB Document 95-1 Entered on FLSD Docket 11/11/2024 Page 46 of 49
Case 1:23-cr-00265-JMF Document 200 Filed 05/25/13 Page 45 of 48

45

want to set up or have or there's some exception, you let the Government know.

MR. LICHTMAN: And, of course, we would agree to monitoring of that device to be used by the children or by the wife perhaps we would agree --

THE COURT: Right now there's none. Right now --

MR. LICHTMAN: Understood.

THE COURT: All right, the goal is that there isn't any. If there's some exception to be made for that for some reasonable purpose, you raise it with the Government, you set forth what you're talking about, you set forth what you think a reasonable condition would be. Right now we're talking about none in the house --

MR. LICHTMAN: Understood.

THE COURT: -- and, as Pre-Trial says, with some confirmation that if it's there, it's been removed, the access is removed.

MR. LICHTMAN: That's fine.

THE COURT: All right?

MR. LICHTMAN: Yes. Your Honor, would you want that letter before he's released?

THE COURT: All conditions to be satisfied, so all confirmation that needs to be done prior to release.

MR. LICHTMAN: Fine.

THE COURT: If you think for some reason this

Case 1:13-cr-00268-UMF Document 200 Filed 05/29/13 Page 46 of 48

46

oversteps what I'm permitted to do in setting conditions under some case law, bring it to my attention.

MR. LICHTMAN:  Fine, Your Honor.

THE COURT:  All right, Mr. Golubchik, if I have your name more or less correct.

MR. GOLUBCHIK:  Yes.

THE COURT:  Let me just caution you that I'm setting these conditions, they're very stringent conditions for you and they affect your family as well.  Assuming you meet these conditions, you have to live by them.  If you do not stay in your home, you know, do not follow Pre-Trial Services directives, are found violating these conditions of release, the situation will get worse than it is now for you, undoubtedly so.  Certainly, if you do not stay where you're supposed to, you can be charged with jumping bail and you can face that as a separate crime, and it can be prosecuted even if these other charges were to be dismissed. Do you understand that?

MR. GOLUBCHIK:  Yes, I understand, you know.

THE COURT:  You also understand if you don't appear when you're supposed to in court, you and whoever cosigns this bond with you can be responsible for the full amount of that bond.

MR. GOLUBCHIK:  Yes, I understand, Your Honor.

THE COURT:  All right.  Anything further?

Case 1:23-cr-00268-JMF Document 200 Filed 05/29/13 Page 47 of 48

47

MR. LICHTMAN:   Nothing from us, Your Honor.

THE COURT:   Okay.   Thank you both.

(off the record)

(Whereupon the above matter is adjourned.)

48

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, United States of America v. Tokhtakhounov, et al., Docket #13cr268, was prepared using digital electronic transcription equipment and is a true and accurate record of the proceedings.

Signature_____

Date:  April 25, 2013