UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61256-BECERRA/STRAUSS

MONARCH AIR GROUP, LLC,

    Plaintiff,
v.

JOURNALISM DEVELOPMENT
NETWORK, INC.,

    Defendant.
_____/

**ORDER GRANTING MOTION TO QUASH**

THIS MATTER came before the Court upon Non-Party The McClatchy Company, LLC's Motion to Quash a Subpoena for Documents ("Motion") [DE 92]. The Court has reviewed the Motion, the briefing thereon [DE 94, 97], and all other pertinent portions of the record.

This defamation action stems from Defendant's publication of an allegedly defamatory article about Plaintiff. Plaintiff asserts – in its response to the Motion – that before the author of the article[1] approached Defendant about publishing the article, the author had sought to publish the article with The Miami Herald, which declined to publish it. Plaintiff "believes that the Herald ultimately declined to publish because it recognized that the Article contained many false or misleading assertions." [DE 94] at 2. Consequently, Plaintiff served a subpoena on The McClatchy Company, LLC ("McClatchy"), the publisher of The Miami Herald. The subpoena seeks the following four categories of documents from McClatchy: (1) all documents and communications between The Miami Herald and Defendant regarding Plaintiff; (2) all documents

---

[1] The author of the article, Lily Dobrovolskaya, is a freelance journalist. She was previously dismissed as a defendant from this action, leaving Journalism Development Network, Inc. as the sole remaining defendant.

and communications between The Miami Herald and OCCRP[2] regarding Plaintiff; (3) all documents and communications between The Miami Herald and Lily Dobrovolskaya (the author of the article) regarding Plaintiff; and (4) all documents and communications regarding or supporting The Miami Herald's decision to not publish the story regarding Plaintiff.

Following service of the subpoena, McClatchy filed the instant Motion. Therein, McClatchy contends that the subpoena should be quashed because it is entitled to a qualified privilege for journalists that exists under the First Amendment, as well as a similar qualified statutory privilege under Florida law.[3]

Relevant here, "[the Eleventh] Circuit recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings." *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013) (citing *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980)). The "privilege applies whether the professional news gathering efforts and results are published or not." *Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, at *3 (S.D. Fla. May 28, 2015) (citing *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998)).

To overcome the privilege and compel information from a reporter claiming the privilege, the party seeking the information must "show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources." *Capers*, 708 F.3d at 1303 (quoting *Caporale*, 806 F.2d at 1504). "Overcoming the standard is a 'heavy burden' and the standard must

---

[2] OCCRP refers to Organized Crime and Corruption Reporting Project. Defendant allegedly owns and controls OCCRP and allegedly published the article on OCCRP's website. *See* Complaint [DE 1-2] ¶¶ 1, 22, 29, 31.

[3] "State privilege defenses have full force and effect in federal court in diversity jurisdiction cases by virtue of Fed. R. Evid. 501." *Price v. Time, Inc.*, 416 F.3d 1327, 1335 (11th Cir. 2005).

be met by clear and convincing evidence." *Gregory*, 2015 WL 3442008, at *3; *United States v. Thompson*, No. 14-20522-CR, 2015 WL 1608462, at *2 (S.D. Fla. Apr. 10, 2015); *see also Lozman v. City of Riviera Beach*, No. 08CV80134, 2014 WL 12360697, at *2 (S.D. Fla. Oct. 8, 2014) ("Once the privilege is properly invoked, the burden shifts to the requesting party to overcome the privilege by satisfying these three elements by clear and convincing evidence." (citations omitted)). "[T]he test for overcoming the privilege remains the same even if the information was not obtained from a confidential source." *Gregory*, 2015 WL 3442008, at *3; *see also United States v. Fountain View Apartments, Inc.*, No. 608-CV-891-ORL-35DAB, 2009 WL 1905046, at *2 (M.D. Fla. July 1, 2009) ("This standard applies even when the source of the information provided to the reporter is not confidential.").

> Regarding the Florida privilege, Florida Statutes provide as follows:
>
> A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. A party seeking to overcome this privilege must make a clear and specific showing that:
>
> (a)   The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;
>
> (b)   The information cannot be obtained from alternative sources; and
>
> (c)   A compelling interest exists for requiring disclosure of the information.

§ 90.5015(2), Fla. Stat.  Like the First Amendment privilege, Florida's qualified statutory privilege "applies to both confidential and non-confidential sources, and in both criminal and civil cases." *Muhammad v. State*, 132 So. 3d 176, 190 (Fla. 2013) (internal citations omitted); *see also State v. Davis*, 720 So. 2d 220, 222 (Fla. 1998) ("[T]he qualified reporter's privilege in Florida applies to factual situations involving both nonconfidential and confidential information."). Federal district

3

courts in Florida have found that the "application of either the federal common law standard or [Florida law] will yield the same result, as the factors of each are virtually indistinguishable." *See, e.g.*, *Gubarev v. BuzzFeed, Inc.*, No. 1:17-CV-60426, 2017 WL 6547898, at *2 n.1 (S.D. Fla. Dec. 21, 2017) (quoting *McCarty*, 195 F.R.D. at 46).

Here, Plaintiff has failed to make the requisite showing to overcome the qualified privilege under the First Amendment and Florida law. First, Plaintiff has failed to show that the information sought is highly relevant. Plaintiff asserts that Dobrovolskaya (the author of the article) pitched the article to The Miami Herald, which ultimately declined to publish it. According to Plaintiff, the information it seeks is highly relevant because "[d]ocuments proving that the Herald declined to publish the Article because it had truth issues establish that [Defendant] knew or should have known that the Article included false information." [DE 94] at 4.

As an initial matter, Plaintiff's sole basis for its assertion that the Miami Herald was going to publish the article is hearsay from Dobrovolskaya and "another [unidentified] person." [DE 94] at 2, 4-5. Nonetheless, even assuming that it is true that The Miami Herald was initially going to publish the article but ultimately decided otherwise, Plaintiff solely offers speculation as to why The Miami Herald declined to publish the article. Plaintiff claims it has a "justifiable belief" that The Miami Herald declined to publish the article because it contained falsities, but Plaintiff fails to explain the basis for its "justifiable belief." Ultimately, Plaintiff has failed to show that its contention that the information sought is "highly relevant" (or relevant and material) is supported by anything other than speculation. And speculation does not cut it, particularly when Plaintiff

4

bears a "heavy burden" of satisfying this element by "clear and convincing evidence." *See Thompson*, 2015 WL 1608462, at *2.[4]

Second, Plaintiff has failed to show that the information sought is unavailable – or cannot be obtained from – other sources. Plaintiff notes that the information sought can only be obtained from three sources: Defendant, Dobrovolskaya, and The Miami Herald. While that seems plausible, Plaintiff fails to show that it made reasonable efforts to obtain the requested information from Defendant and Dobrovolskaya. As to Defendant, Plaintiff states that Defendant, in response to a document request, indicated it has no documents and communications between Dobrovolskaya, Defendant, and the Herald regarding the article at issue in this case and why The Herald turned down the publication of the article. But Plaintiff fails to detail any other efforts that it made to obtain the *information* at issue. Importantly, "[i]t is not whether the form of the evidence itself is unavailable but, rather, whether the information revealed by the evidence is otherwise unavailable." *Thompson*, 2015 WL 1608462, at *3. Even if Defendant did not have documents responsive to Plaintiff's request for production, that does not mean that Plaintiff cannot attempt to obtain the *information* at issue from Defendant through other means like interrogatories or a deposition. Additionally, Plaintiff has failed to demonstrate any efforts that it made to obtain the information from Dobrovolskaya. Instead, Plaintiff states that Dobrovolskaya has "disappeared in the wind" and that Plaintiff has diligently attempted to locate her. However, Plaintiff fails to detail the efforts it has made to locate *or contact* Dobrovolskaya beyond seeking discovery from Defendant regarding Dobrovolskaya's location. Simply stated, greater efforts were needed for Plaintiff to satisfy the requirement that the information is unavailable from other sources.

---

[4] Plaintiff offers similarly speculative reasons to support its contention that the information sought is necessary to the proper presentation of its case or that a compelling interest exists for requiring the disclosure of the information. Thus, it has also failed to make the requisite showing to support this requirement.

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Motion [DE 92] is **GRANTED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of November 2024.

_Jared Strauss_
Jared M. Strauss
United States Magistrate Judge