UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61256-BECERRA/STRAUSS

**MONARCH AIR GROUP, LLC,**

    Plaintiff,

v.

**JOURNALISM DEVELOPMENT NETWORK, INC.,**

    Defendant.
_____/

# ORDER

THIS MATTER came before the Court upon Plaintiff's Motion to Overrule Defendant's Privilege Objections and Confidentiality Designations ("Motion") [DE 124]. The Court has reviewed the Motion, Defendant's Response [DE 137/138], all other pertinent portions of the record, and related materials Defendant submitted to the Court (in accordance with the Court's Order at DE 118).[1]

# BACKGROUND

This defamation action stems from Defendant's publication of an allegedly defamatory article (the "Article") about Plaintiff. On January 22, 2025, Plaintiff filed a Notice of Discovery Dispute [DE 116] seeking Court intervention on three discovery disputes, which Plaintiff framed as follows:

    a. [Defendant] has produced a document bearing the designation "Outside Attorney's Eyes Only" ("AEO"). Plaintiff contends this document (Bates

---

[1] Among other things, I ordered Defendant to submit a small sample of representative items on Defendant's Supplemental Privilege Log that are in dispute. [DE 118]. Defendant submitted the following materials: JDN_01351-01365; JDN_01642-01689; and Supplemental Privilege Log entries 2, 13, 14, 19, 22, 29, 105, 183, 188, and 199.

      numbered JDN_01642) should not be designated as AEO. [Defendant] disagrees and maintains that the document is properly designated AEO.

   b. [Defendant] has produced certain documents and communications with the contact names and/or information of non-confidential sources redacted. The Plaintiff contends that these documents and communications (Bates numbered JDN_01642-01649, 01659, 01661, 01663, 01668, 01670-01671, 01674-01676, 01679, 01681-01686, and 01689) should not contain such redactions. [Defendant] disagrees with the Plaintiff's position.

   c. [Defendant] has produced a Supplemental Privilege Log, identifying certain documents and communications as protected under the Reporter's Privilege. The Plaintiff asserts that the documents and communications identified in the Supplemental Privilege Log (entries 2-6, 8-14, 17-25, 27-204 and the documents that [Defendant] already produced) do not qualify for protection under the Reporter's Privilege. [Defendant] disagrees.

The Court then directed the parties to brief the disputes raised in Plaintiff's Notice of Discovery Dispute. *See* [DE 118]. The Motion [DE 124] and Response [DE 137/138] followed.

## ANALYSIS

### A. JOURNALIST'S PRIVILEGE

The bulk of the Motion is aimed at seeking to overrule Defendant's assertion of privilege. In this regard, Defendant has served a privilege log [DE 126], wherein it contends that more than 200 documents are subject to a journalist's or reporter's privilege, a qualified privilege for journalists that exists under the First Amendment, as well as a similar qualified statutory privilege under Florida law.[2]

The Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings." *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013) (citing *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Miller*

---

[2] "State privilege defenses have full force and effect in federal court in diversity jurisdiction cases by virtue of Fed. R. Evid. 501." *Price v. Time, Inc.*, 416 F.3d 1327, 1335 (11th Cir. 2005).

*v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980)). The "privilege applies whether the professional news gathering efforts and results are published or not." *Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, at *3 (S.D. Fla. May 28, 2015) (citing *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998)).

To overcome the privilege and compel information from a reporter claiming the privilege, the party seeking the information must "show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources." *Capers*, 708 F.3d at 1303 (quoting *Caporale*, 806 F.2d at 1504). "Overcoming the standard is a 'heavy burden' and the standard must be met by clear and convincing evidence." *Gregory*, 2015 WL 3442008, at *3; *United States v. Thompson*, No. 14-20522-CR, 2015 WL 1608462, at *2 (S.D. Fla. Apr. 10, 2015); *see also Lozman v. City of Riviera Beach*, No. 08CV80134, 2014 WL 12360697, at *2 (S.D. Fla. Oct. 8, 2014) ("Once the privilege is properly invoked, the burden shifts to the requesting party to overcome the privilege by satisfying these three elements by clear and convincing evidence." (citations omitted)). "[T]he test for overcoming the privilege remains the same even if the information was not obtained from a confidential source." *Gregory*, 2015 WL 3442008, at *3; *see also United States v. Fountain View Apartments, Inc.*, No. 608-CV-891-ORL-35DAB, 2009 WL 1905046, at *2 (M.D. Fla. July 1, 2009) ("This standard applies even when the source of the information provided to the reporter is not confidential.").

Regarding the Florida privilege, Florida Statutes provide as follows:

> A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. A party seeking to overcome this privilege must make a clear and specific showing that:

3

(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;

(b) The information cannot be obtained from alternative sources; and

(c) A compelling interest exists for requiring disclosure of the information.

§ 90.5015(2), Fla. Stat.[3]  Like the First Amendment privilege, Florida's qualified statutory privilege "applies to both confidential and non-confidential sources, and in both criminal and civil cases." *Muhammad v. State*, 132 So. 3d 176, 190 (Fla. 2013) (internal citations omitted); *see also State v. Davis*, 720 So. 2d 220, 222 (Fla. 1998) ("[T]he qualified reporter's privilege in Florida applies to factual situations involving both nonconfidential and confidential information."). Federal district courts in Florida have found that the "application of either the federal common law standard or [Florida law] will yield the same result, as the factors of each are virtually indistinguishable." *See, e.g.*, *Gubarev v. BuzzFeed, Inc.*, No. 1:17-CV-60426, 2017 WL 6547898, at *2 n.1 (S.D. Fla. Dec. 21, 2017) (quoting *McCarty*, 195 F.R.D. at 46).

In the Motion, Plaintiff does not appear to argue that the qualified privilege does not apply here in the first place; rather, it contends that it can overcome the privilege. Among other things, Plaintiff contends that the documents sought are highly relevant to its claims given that Defendant has raised affirmative defenses alleging substantial truth, official report privilege, and First Amendment protections. Defendant has also alleged in its Affirmative Defenses that Plaintiff is a public figure and that Defendant did not act with actual malice.[4]  Plaintiff argues that the

---

[3] Although the requirements to overcome the privilege under § 90.5015(2) do not differentiate between cases where the journalist is a party and those where the journalist is not a party, "upholding the privilege is [] less compelling" in a libel suit where the journalist raising the privilege is a defendant. *News-J. Corp. v. Carson*, 741 So. 2d 572, 576 (Fla. 5th DCA 1999).

[4] *See* [DE 17] at 10 ("The statements and publication about which Plaintiff complains relate to Plaintiff as a public figure and concerned its role as an actor in newsworthy events, including contracting with the U.S. government. Plaintiff accordingly cannot recover for any alleged false

documents sought are needed to determine Defendant's state of mind and that the documents are highly relevant to the issue of actual malice. Additionally, according to Plaintiff, it can only obtain information regarding Defendant's internal deliberations and decisions relating to the Article's publication from Defendant itself (and not from other sources). However, Plaintiff does not appear to be seeking information that would identify Defendant's confidential sources. *See* [DE 124] at 7 (indicating Plaintiff believes "the documents can be produced in a way that would protect the confidential source's identity"); *id.* at 8 (requesting that the Court conduct "an in camera review to determine that [Defendant] can produce documents without identifying any confidential sources").

In its Response, Defendant contends that Plaintiff fails to overcome the qualified journalist's privilege. Preliminarily though, Defendant contends that Plaintiff "puts the cart before the horse" because Plaintiff does not identify the document requests to which the items on the privilege log are responsive and fails to account for other objections that Defendant raised to those requests (such as relevance and proportionality). [DE 138] at 2. On the surface, Plaintiff's failure to address other objections sounds problematic. After all, if a party raises two objections to a document request (objections to producing *any* documents responsive to the request), and the Court overrules one objection but sustains the other, the Court is not going to compel the objecting party to produce responsive documents given that one objection was sustained.

However, diving just below the surface here makes it obvious that if Defendant's privilege objection is overruled, its other objections would be too (at least with respect to the documents on the privilege log that Defendant has already identified as responsive to Plaintiff's requests). That is because a finding that a party overcomes the journalist's privilege for any particular documents

---

and defamatory statements without proving the requisite level of fault (actual malice) required in connection with its status as a public figure.").

5

necessarily entails or implicitly encompasses a finding that the documents at issue are relevant and proportional. In other words, because overcoming the privilege requires establishing that discovery is "highly relevant [and] necessary to the proper presentation of the case," *Capers*, 708 F.3d at 1303 – or, under Florida law, that "[t]he information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought," § 90.5015(2)(a), Fla. Stat. – a determination that a party has overcome the privilege undoubtedly means that the discovery at issue is relevant and proportional.[5]

After raising the foregoing preliminary argument, Defendant categorizes the items on the privilege log into four groups, which it labels as follows: (1) Documents/Materials implicating confidential sources (entries 2-6, 22, 23); (2) Documents about Plainly Irrelevant Matters (entries 8, 9, 11-14, 17, 22, 25); (3) Documents about the Timeline (entries 18-21, 24, 27, 28); and (4) Early Drafts of the Article and Related Google Comments (entries 10, 29-204). I will evaluate each group, beginning with the fourth, which covers most of the entries at issue.

**1. Early Drafts of the Article and Related Google Comments**

I find that Plaintiff has overcome the privilege for the documents that Defendant has categorized as Early Drafts of the Article and Related Google Comments. I agree with Plaintiff that these types of documents are highly relevant (or relevant and material) to issues in the case such as malice. Defendant states that it has already produced the final 23 drafts of the Article (which are from the three days before publication) and that it should not be required to produce further drafts. According to Defendant, many drafts only differ by a few non-material words or sentences and most drafts have no bearing on the accuracy of the alleged defamatory statements

---

[5] While Defendant also notes that it objected to certain requests as overbroad, even if such requests are overbroad, any overbreadth apparently did not prevent Defendant from readily identifying documents on the privilege log as responsive.

6

and implications at issue in this case. Defendant further contends that only drafts generated closer to the time it published the Article are relevant to showing Defendant's state of mind at the time of publication.

Defendant's arguments that it should not have to produce any further drafts and that earlier drafts and comments have no bearing on its state of mind at the time of publication are unavailing, and it is unclear why Defendant drew an arbitrary line in the sand at 23. At any rate, editing decisions, deliberations, and internal communications regarding the Article are the types of discovery that go to the core of the case and that are likely to reflect Defendant's state of mind. Even if such decisions and discussions do not directly implicate the specific statements Plaintiff alleges are false, Defendant's deliberations on how to present, frame, and emphasize much of the article's content is relevant to Defendant's state of mind *viz a viz* what Defendant calls the "Criminal Association Implication" at issue in Count II. And, if anything, drafts earlier in time (not drafts limited to the three-day period preceding publication) are more likely to be probative of Defendant's state of mind as the bulk of the fact checking and major content decisions likely occurred more than three days before publication. While I understand that not every single draft of the Article is likely to be highly relevant on its own and that not every single comment will be highly relevant, the drafts and comments are likely to be highly relevant as a whole. The picture that the drafts and comments provide as a whole is very likely to be probative of Defendant's state of mind. And that is true even if the drafts and comments tend to show that Defendant did not act with malice. *See* Fed. R. Evid. 501 (emphasis added) (providing that evidence is relevant if "it has any tendency to make a fact more *or less* probable than it would be without the evidence" and "the fact is of consequence in determining the action"); *see also Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) ("Relevance in the context of discovery 'has been construed broadly

7

to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))).

Additionally, because the drafts and comments directly bear on Defendant's state of mind, which goes to the heart of determining actual malice, a compelling need or interest exists for requiring their disclosure.[6]  *Cf. Price*, 416 F.3d at 1345 ("Price must show 'that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.' It undoubtedly is. As a public figure Price has to show actual malice, which means that he must show by clear and convincing evidence that the defendants published the defamatory statements about him either with actual knowledge of their falsity or with reckless disregard for the truth." (internal citation omitted)); *see also Cable News Network, Inc. v. Black*, 308 So. 3d 997, 1000-01 (Fla. 4th DCA 2020) (recognizing, *inter alia*, that contemporaneous documents and communications reflecting a defendant's state of mind may go to the heart of a defamation case).[7]

---

[6] That makes the drafts and comments necessary to the presentation of the case as well. *See Gregory*, 2015 WL 3442008, at *6 ("[A] close review of several opinions issued from courts in this circuit prior to the Eleventh Circuit's decision in *Caporale,* and the *Caporale* decision itself, support the conclusion that the 'necessary to the proper presentation of the case' prong requires only that a party demonstrate a *compelling need* for the information rather than requiring that the party establish that it is unable to prove its claim or defense without the information sought.").

[7] In the Motion, Plaintiff cites *Black* for the proposition that the compelling interest prong is (apparently automatically) satisfied in defamation cases. Defendant correctly points out in its Response that Plaintiff's statement characterizing *Black* is misleading. It is true that the compelling interest prong *may* or *can* be satisfied in a defamation case. But Plaintiff's characterization is a gross overgeneralization. At any rate, notwithstanding Plaintiff's misleading statement, I find that the compelling interest prong is satisfied in this case for the documents and communications discussed above that directly bear on Defendant's state of mind given that malice is an issue in this case. At the same time, that does not mean that a compelling need exists for every single type of document that Defendant has claimed as privileged. Rather, I have separately evaluated and determined whether Plaintiff has overcome the privilege for each individual category of discovery at issue (and, as indicated below, for one category I find that Plaintiff has only overcome the privilege for certain documents in that category).

Moreover, information reflected within the drafts and comments – specifically, the information therein that bears on Defendant's state of mind – is precisely the type of information that Plaintiff will not be able to obtain from other sources. Therefore, Defendant shall produce entries 10 and 29-204 on the privilege log. However, Defendant may redact information that is highly likely to reveal the identity of confidential sources (particularly given that, as indicated above, the Motion implies Plaintiff is fine with documents being produced in a manner that protects the identity of confidential sources). In redacting information, Defendant should redact the least amount necessary to conceal the identity of confidential sources. Rarely (if at all) should Defendant redact complete sentences.

### 2. Timeline Documents

Next, I find that Plaintiff has overcome the privilege for documents about the timeline. At a minimum, these documents appear to be relevant and material to Count II of the Complaint, wherein Plaintiff alleges that the Article "impl[ies] a defamatory connection between [Plaintiff], criminals, and/or criminal activity." Complaint ¶ 60. And for reasons similar to those regarding the article drafts and comments, a compelling interest exists for requiring disclosure of the timeline documents, and the timeline documents include information that Plaintiff can only obtain from Defendant. Therefore, Defendant shall produce entries 18-21, 24, 27, 28.

### 3. Confidential Source Documents

For the category that Defendant categorizes as documents and materials implicating confidential sources, I find that Plaintiff has overcome the privilege for entries 5, 22, and 23 but not entries 2, 3, 4, and 6. Entries 5, 22, and 23 are internal communications (including communications with the author of the Article) that will necessarily be relevant and material to Defendant's state of mind and the issue of malice. As discussed in further detail above, editing

9

decisions, deliberations, and internal communications regarding the Article are the types of discovery that go to the core of the case and that are likely to reflect Defendant's state of mind. Likewise, for the reasons discussed above, a compelling interest exists for requiring disclosure of these communications, which necessarily include information that Plaintiff will not be able to obtain from other sources. Therefore, Defendant shall produce entries 5, 22, and 23. However, as with the article drafts and comments category, Defendant may redact information that is highly likely to reveal the identity of confidential sources. Again, redactions should be very limited.

As to entries 2, 3, 4, and 6, Plaintiff has failed to show that the information contained therein cannot be obtained from other sources. These entries contain communications with a confidential source and excerpts of audio recordings with a confidential source. In other words, the documents and materials included in these entries are not the same types of internal communications and other materials discussed above that contain information Plaintiff can only obtain from Defendant. And as Defendant notes in its Response, Plaintiff has not attempted to depose Plaintiff's former employees who may have provided the information at issue in these entries. Thus, Plaintiff has failed to establish that it made reasonable efforts to obtain the information from other sources. *Cf. Price*, 416 F.3d at 1346-48. Therefore, Plaintiff has failed to overcome the privilege for entries 2, 3, 4, and 6.

### 4. Documents on Purportedly Irrelevant Matters

That leaves the category of documents that Defendant categorizes as documents pertaining to irrelevant matters (entries 8, 9, 11-14, 17, 22, 25). Entry 22 has already been addressed above – Defendant must produce it. As to the other entries, I find that they must be produced, with the exception of the communications with John Dawkins and Paul Slavin. Mr. Dawkins and Mr. Slavin appear to be non-confidential sources who are cited in the Article. Plaintiff has not

overcome the privilege for those communications because it has not shown it cannot obtain the communications from Mr. Dawkins and Mr. Slavin. In fact, Defendant's Response indicates that Plaintiff has already obtained the Slavin email(s) from Mr. Slavin.

The other items in entries 8, 9, 11-14, 17, and 25, however, must be produced. Aside from the emails with Mr. Dawkins and Mr. Slavin, the emails in these entries appear to be internal communications (including with the author of the Article). Defendant contends that the emails are irrelevant because, for instance, several pertain to statements that Plaintiff does not contend are false and/or that Plaintiff has not sued upon in this case. However, for the reasons discussed in the preceding sections, Defendant's internal communications regarding the Article, including those pertaining to fact-checking, are the types of documents that are directly relevant to Defendant's state of mind (and that Plaintiff cannot obtain from elsewhere). Therefore, Defendant must produce them.

### B. JDN_01642

Defendant produced a redacted version of JDN_01642 and designated it (the redacted version) as AEO. Plaintiff contends that Defendant's AEO designation is improper and requests that the Court overrule the designation. Plaintiff also requests that the Court order Defendant to produce an unredacted version of JDN_01642. I have reviewed both the redacted and unredacted versions of JDN_01642.

In this case, the parties agreed upon language (which the Court approved) that allows them to designate discovery material as "Confidential" if the material "contains trade secrets, commercially sensitive information, information protected by a common law or privacy right, or information protected by established public policy recognized as arising under the Florida or United States Constitution or applicable statutes and case law." [DE 74-1] at 2-3; *see also* [DE

11

75] (approving the parties' proposed confidentiality order with certain modifications that are not relevant here). The parties also agreed that they may designate discovery material as AEO if the material both comes within the foregoing definition (for "Confidential" materials) *and* "the designating Party additionally has reason to believe disclosure of the Discovery Material should be limited to counsel for the receiving Party because the material contains commercially or otherwise sensitive material, the disclosure of which may result in harm to the designating Party or its interests." [DE 74-1] at 2-3.

JDN_01642 is an email containing a rough transcription of a phone call (or interview) with a confidential source. Defendant contends that its AEO designation is proper because the email "discloses information about a [] confidential news source which, if made available to [Plaintiff's] owners and/or employees, would likely identify the confidential news source." [DE 138] at 10. And Defendant asserts that it would be harmed if it discloses information that allows Plaintiff to ascertain the identity of the confidential source. While I agree with this latter statement, I find that disclosure of the *redacted* version of JDN_01642 is highly unlikely to reveal the identity of the source. In fact, a substantial portion of what is contained in the redacted version of the email is reflected in the Article. Because disclosure of the redacted version of JDN_01642 is highly unlikely to reveal the identity of the confidential source, the disclosure of the redacted version of the email is highly unlikely to result in harm to Defendant. Therefore, Defendant's AEO designation for the redacted version of JDN_01642 is **OVERRULED**.

However, Defendant need not produce an unredacted version of JDN_01642. Having reviewed the unredacted version of JDN_01642, I find that the disclosure of certain information therein – parts of the information that is currently redacted – is highly likely to reveal the identity of the confidential source. And more significantly, based on my review of the email, I find that

12

the redacted information is not relevant or material as it does not pertain to the defamatory statements or implications alleged in the Complaint (and the email is not the type of internal communication discussed in Section A above that is highly relevant to Defendant's state of mind). Moreover, given that the redacted portion of the email merely transcribes certain information provided by a confidential source, Plaintiff has failed to show it cannot obtain the information elsewhere (for the same reasons discussed above in the context of entries 2, 3, 4, and 6 of Defendant's privilege log). Therefore, Plaintiff cannot overcome the journalist's privilege insofar as the redacted information is concerned.

### C. JDN_01643-01689

In the Motion, Plaintiff requests that the Court overrule Defendant's designation of JDN_01643-10689 as "Confidential" and that the Court order Defendant to remove certain redactions presently contained in JDN_01643-10689. Plaintiff's request to overrule the "Confidential" designation for these documents is **DENIED** because Plaintiff did not raise the issue in its Notice of Discovery Dispute [DE 116], and Plaintiff was only permitted to file a motion addressing the discovery disputes raised therein, *see* [DE 118].

As to the redactions, Plaintiff takes issue with the redactions in JDN_01643-01649, 01659, 01661, 01663, 01668, 01670-01671, 01674-01676, 01679, 01681-01686, and 01689. Plaintiff contends that Defendant has improperly redacted the names and contact information of non-confidential sources, and Plaintiff contends that the redacted information is "needed to identify, contact, or depose witnesses with knowledge about the Article's drafting and publication." [DE 124] at 11. Defendant responds that it redacted information in JDN_01659, 01668, and 01689 that would identify confidential sources and that, in the other documents, it "redacted email addresses, Signal and WhatsApp numbers, an internal JDN Google drive link, a PCP encryption address, and

a portion of a web address for a government document JDN had produced earlier." [DE 138] at 11.  Defendant also contends that Plaintiff does not need the names and contact information that has been redacted because Defendant has already identified the individuals in discovery.

It is unclear why the parties were unable to resolve these redaction issues through conferral. As an initial matter, the parties are not even on the same page regarding the type of information that is redacted in JDN_01659, 01668, and 01689.  At any rate, with the exception of the email address of the Article's author, I agree with Defendant that the information that has been redacted on JDN_01659, 01668, and 01689 contains content that would reveal the identity of a confidential source.  Therefore, Defendant need not provide unredacted versions of these three pages.  As to the other pages at issue, Plaintiff perhaps overstates its need for the names and contact information. And this dispute is silly given that most of the redactions appear to be redactions of the author's email address.  Nonetheless, I fail to see why it was appropriate for Defendant to redact the information.  Therefore, Defendant shall produce JDN_01643-01649, 01661, 01663, 01670-01671, 01674-01676, 01679, and 01681-01686, without redacting names and contact information. However, Defendant may redact the Google drive link and PCP encryption address.  Additionally, Defendant may designate the documents as "Confidential."

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Motion [DE 124] is **GRANTED IN PART and DENIED IN PART**, as set forth above.  Defendant shall produce the documents that it is required to produce in this Order by **February 14, 2025**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 10th day of February 2025.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

14