**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 23-cv-61256-JB/JMS**

MONARCH AIR GROUP, LLC,

    Plaintiff,

v.

JOURNALISM DEVELOPMENT
NETWORK, INC.,

    Defendant.

_____/

**DEFENDANT JOURNALISM DEVELOPMENT NETWORK, INC.'S**
**OBJECTIONS TO REPORT AND RECOMMENDATION (ECF No. 172)**

Pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b) and Magistrate Rule 4(b) of the Local Rules of the Southern District of Florida, Defendant Journalism Development Network, Inc. ("JDN") hereby objects to and appeals the Magistrate Judge's Report and Recommendation, [ECF No. 172; "R&R"], recommending denial of JDN's Motion for Partial Judgment on the Pleadings as to Count II of the Complaint [ECF No. 95; the "Motion"].

## Introduction

The Motion challenges Plaintiff Monarch Air Group, LLC's ("Plaintiff" or "Monarch") claim for defamation by implication in Count II of the Complaint. Courts must be cautious, of course, when considering defamation by implication claims because they arise "where *literally true* statements are conveyed in such a way as to create a false impression." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008) (emphasis added). Caution is necessary because imposing liability for truthful speech raises serious and challenging First Amendment concerns. Indeed, as the U.S. Supreme Court has stated, "[t]ruth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison v. La.*, 379 U.S. 64, 74 (1964). The speech at issue here – an online investigative news article about government contracts being awarded to an air charter business formerly owned by criminals working with the Russian mob – is certainly a matter of public concern, as this Court has previously recognized. *See* ECF No. 83 at 9 ("Undoubtedly, the purported criminal history of a company's previous owners, particularly a company contracted to perform sensitive tasks for the government, is a matter of public interest."). Accordingly, the Eleventh Circuit has recognized that a claim like Monarch's, based upon truthful reporting, creates "a First Amendment problem." *Rubin v. U.S. News & World Report*, 271 F.3d 1305, 1309 n.11 (11th Cir. 2001). The R&R fails to account for the free-speech ramifications of Plaintiff's claim.

The R&R makes three fundamental missteps that render it inconsistent with the Rules of Civil Procedure, Florida law, and the First Amendment. First, the R&R largely disregards the defamation by implication claim as actually pled in the Complaint. Among other things, it relies upon various statements in the Article to find a defamatory implication, even though the Complaint does not allege that such statements caused a defamatory implication. Second, the R&R's analysis of the Article never clearly articulates the allegedly *false* and defamatory *fact* implied by the Article. Without an implication of a false and defamatory fact, no claim for defamatory implication can stand. And third, the analysis disregards the issue of whether truthful facts were "juxtaposed" in such a way as to create a false impression. Florida law is clear that a news article does not imply false and defamatory facts merely because it reports unflattering information about the plaintiff. Instead, the plaintiff must show how the publication juxtaposes truthful facts in such a way as to create a false factual implication, which the Complaint here does not do.

## Background

In November of 2020, JDN published an article on its occrp.com website titled "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Russian Criminals" (the "Article"). [*See* ECF No. 1-2; "Compl." at ¶ 1; Exh. A at 20-33] A revised version of the Article was published in June 2021.  [*Id.* at ¶ 29; Compl. Exh. D at 66-79] The Article reported on Monarch's business and explained that Monarch and one of its affiliates have been tasked with "moving fuel in Israel for the Department of Defense (DoD), flying people around Afghanistan, and transporting protected witnesses in the U.S. for the Marshals Service." [ECF No. 1-2; Compl. Exh. A at 21] The Article also reported truthfully on Monarch's history, including the criminal convictions of two of its former owners, Anatoly Golubchik and Vadim Trincher. [*Id.* at 20-26] The Article discussed other former Monarch owners, including Boruch Freedman, who "fled a warrant for his arrest in

the U.S. and remains on the lam," and Jacob Gitman, who was found liable for $3.8 million in a civil case and who is the father of Monarch's current owner, David Gitman.  [*Id.* at 21, 23-24] The Article also quoted certain individuals questioning the established vetting process for awarding government contracts for tasks like the ones described above. [*Id.* at 30, 31]

In November 2024, JDN filed its Motion directed solely at Count II, the defamation by implication claim. [ECF No. 95] JDN argued that Count II should be dismissed because the Article was true and did not imply any actionable false and defamatory statements about Monarch. The R&R recommended denying the Motion, concluding that the Article could be read as impliedly defaming Monarch. [ECF No. 172]

## Argument

Because the Court reviews the R&R *de novo*, the Argument below briefly sets forth the standards for reviewing a motion for judgment on the pleadings. It then addresses how the relevant pleading principles and substantive law, properly applied, necessitate sustaining JDN's objections to the R&R and granting JDN's Motion.

### I.    A Motion For Judgment On The Pleadings Is Governed By The Same Standards As A Rule 12(b)(6) Motion.

A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6)." *RM Broad., LLC v. U.S. Dep't of Justice*, 379 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019). Thus, the "ultimate question on a motion for judgment on the pleadings under Rule 12(c) is . . . whether the complaint states a claim for relief." *Rothenberg v. United Parcel Serv., Inc.*, No. 3:23-cv-94-MMH-LLL, 2023 WL 7282887, at *2 (M.D. Fla. Nov. 3, 2023) (internal quotation omitted). The Court must accept the factual allegations in the complaint as true, but legal conclusions "are not entitled to [an] assumption of truth." *Id.* at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Moreover, Rule 8 requires

a plaintiff to plead facts which are more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). A court's duty to construe a plaintiff's complaint liberally is not the equivalent of a "duty to re-write [the complaint] for the plaintiff." *Wilchombe v. TeeVee Toons, Inc.*, 555 F. 3d 949, 960 (11th Cir. 2009) (citation omitted).

## II.     The Report's Findings And Conclusions Improperly Go Beyond The Complaint And The Allegations Pled.

In recommending that the Motion be denied, the R&R concludes that the Article could be actionable as impliedly defamatory, but that conclusion largely disregards what Monarch actually alleges. Rather than tracking Monarch's allegations to assess whether the Article's statements as identified in the Complaint were "juxtaposed" in such a way as to create a false and defamatory implication, the R&R looks for and isolates never-pled statements to see if they can be construed to create an implication. By disregarding the pleadings – and disregarding express statements in the Article that negate the alleged implication – the R&R effectively denies JDN notice of and the opportunity to defend itself against a new and novel defamation by implication claim. If adopted by this Court, the R&R would leave JDN in the position of having to defend itself at trial against allegations that were *never pled* and as to which JDN, understandably, *did not conduct detailed discovery*. Such a result would be both unfair and contrary to law.

### A.     The Alleged Factual Statements And Omissions Supporting An Implication Claim Must Be Pled With Specificity.

Under Florida law, defamation by implication arises when a defendant juxtaposes a series of true facts, or omits facts, to create a false suggestion, impression, or implication. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) ("***Turner I***"), *aff'd*, 879 F.3d 1254, 1267-68 (11th Cir. 2018) ("***Turner II***"). Accordingly, a plaintiff claiming defamation by implication must

"put [the] Defendant on notice of the specific facts [the defendant has] (supposedly) manipulated in [its] effort to 'weave' a tapestry of defamation." *Markle v. Markle*, No. 8:22-cv-511-CEH-TGW, 2024 WL 1075339, at *25 (M.D. Fla. Mar. 12, 2024); *Block v. Matesic*, No. 21-61032-CIV-ALTMAN/Hunt, 2023 WL 8527670, at *9 (S.D. Fla. Dec. 8, 2023) (dismissing implication claim because plaintiff's pleadings had not "connected the dots" by specifically identifying the true statements or omitted facts underlying the claim); *see also Corsi v. Newmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) (dismissing implication claim where plaintiff failed to allege "how" defendant's words were true but gave a false implication).

All the protections of defamation law apply to defamation by implication, including the requirement that a plaintiff suing a media defendant provide pre-suit notice as mandated by Section 770.01, Florida Statutes. *See Klayman v. City Pages*, No. 5:13-cv-143-Oc-22PRL, 2013 WL 12157865, at *3 (M.D. Fla. Nov. 15, 2013) (Section 770 pre-suit notice is required in both defamation and defamation by implication actions). Section 770.01 provides:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast *and the statements therein which he or she alleges to be false and defamatory.*

*Id.* (emphasis added). The purpose of pre-suit notice "is to protect the public's interest in the free dissemination of news." *Mancini v. Personalized Air Conditioning & Heating, Inc*., 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997). An implication claim premised upon statements never identified in the complaint – or in the Section 770 notice – is both impermissible and a deprivation of the legally protected right of the media to monitor and correct publications and to limit their liability.

### B.    The R&R Improperly Rewrites Plaintiff's Complaint by Including Numerous Statements Not Alleged To Have Created A False Implication.

The R&R disregards the actual allegations in Monarch's Complaint, instead focusing on

never pled statements or phrases to find an actionable implication: namely, that "Golubchik and Trincher remained connected to Monarch and/or the Gitmans after Golubchik and Trincher left Monarch" or that Monarch is now "unworthy of government contracts." R&R at 9, 10.

The R&R repeatedly states that the Article as a "whole" creates these implications, *see id.* at 9, 10, 14, but the R&R actually derives the purported implications from individual statements, not the Article as a whole, while simultaneously disregarding the Article's numerous express statements negating the alleged implication. In this respect, the R&R fundamentally misapplies Florida defamation law. *See, e.g.*, *Turner II*, 879 F.3d at 1267-68 (rejecting plaintiff's effort (1) to cherry pick allegedly defamatory statements rather than reading publication as a whole and (2) to claim an implied meaning expressly disavowed by the publication).

 In particular, the R&R cites or paraphrases the following statements from the Article to support the alleged implication, even though the Complaint *never* alleges or puts JDN on notice that any of these statements purportedly created an actionable implication (internal quotations below indicate that the R&R is quoting the Article):

- J[acob] Gitman denied having any "business relations" with Golubchik and Trincher since 2013, the Article states. "However, public records show that Gitman partnered with Golubchik and Trincher in at least four aviation companies. Panama-based SkyWay International Holding still lists all three men as corporate officers." R&R at 9.

- The Article notes that "[t]wo other investors who ran Monarch" *after* Golubchik and Trincher "also had legal troubles, and one fled a warrant for his arrest in the U.S. and remains on the lam." *Id.* at 10 (emphasis in R&R).

- The Article also later mentions how J[acob] Gitman was found liable in a civil lawsuit in 2017 of misleading investors in some other venture. *Id.*

- The Article spends a significant amount of time discussing past events – events related to Golubchik's and Trincher's criminal wrongdoing chief among such events…And the Article juxtaposes facts regarding those events…[with] the fact that Monarch was still "making flights as recently as September" 2020 (two months before publication). *Id.* at 14.

6

- The Article quotes [Gary] Kalman, [head of Transparency International], stat[ing], *inter alia*, the following: "fact 'that Monarch was able to transport protected witnesses, despite the backgrounds of its former owners, shows the need for more thorough checks on companies that are awarded public contracts. Common sense says that contracts should be clearly vetted before going to entities with a history of criminal affiliation, but there is no legal mandate that we check. . . That is a significant gap in the law,  and *this story is a prime example of how such a gap might be dangerously exploited.*" *Id.*  (emphasis in R&R)

Because Monarch was required to plead the facts in the Article purportedly giving rise to a defamatory implication, and because the Complaint did *not* identify any of these statements, they cannot provide the basis for an actionable defamation by implication claim against JDN, and the R&R errs by relying upon them. *Block*, 2023 WL 8527670, at \*9.

Just as critically, the Article expressly disavows the alleged implications found by the R&R. For example, the Article does not imply that "Golubchik and Trincher remained connected to Monarch and/or the Gitmans after Golubchik and Trincher left Monarch" because the Article repeatedly and expressly states that Golubchik and Trincher ceased owning Monarch in 2012 (the Article makes this point at least 8 times) and went to prison for five years starting in 2014. [Motion at 10-11; ECF No. 1-2; Compl. Exh. A at p. 22] The Article's title likewise makes clear that these two criminals "*once owned*" Monarch, meaning they did not own it at the time of publication. [ECF No. 1-2; Compl. Exh. A at p. 21 (emphasis added)] The Article quotes Gary Kalman describing Monarch as having "a *history* of criminal affiliation," again meaning that such criminal affiliation was in the past. [*Id.* at pp. 21, 30 (emphasis added)] The Article quotes a spokesperson from the Defense Logistics Agency as saying that neither Golubchik nor Trincher were "involved in the bidding or performance of the" contract Monarch won with the Department of Defense in 2012. [*Id.* at p. 23] The Article quotes Monarch's spokesperson saying that "the company has not been affiliated with Golubchik or Trincher since 2012." [*Id.*] The Article also quotes former Monarch owner Jacob Gitman as saying that he has not had "any business relationship with them

since 2013." [*Id.* at p. 26] In light of these repeated express statements that Golubchik and Trincher are former owners no longer affiliated with Monarch, an implication claim based upon the idea that the Article implies that Golubchik and Trincher are somehow still "connected" to Monarch fails as a matter of law. *Turner II*, 879 F.3d at 1269-70 (implication claim "fail[ed] in light of the express words in the Report"); *Utterback v. Morris*, No. 5:23-cv-279-TKW/MJF, 2024 WL 3809368, at *4 (N.D. Fla. July 24, 2024), *report adopted*, 2024 WL 3799423 (N.D. Fla. Aug. 12, 2024), *aff'd* 2025 WL 1455900 (11th Cir. May 21, 2025) (express use of past tense verbs contradicted plaintiff's claim that publication implied plaintiff was *presently* engaged in "continuing criminal conduct").[1]

To the extent that the R&R seems to question JDN's decision to report that Monarch's *past owners* included Boruch Freedman, who "fled a warrant for his arrest in the U.S. and remains on the lam," and Jacob Gitman, who "was found liable in a civil lawsuit in 2017 of misleading investors in some other venture," such second-guessing of editorial discretion is inconsistent with First Amendment freedoms and definitively not the province of the courts, as the U.S. Supreme Court has made very clear: "The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Indeed, as the Eleventh Circuit has

---

[1]   The purported implication identified by the R&R, that "Golubchik and Trincher remained connected to Monarch and/or ***the Gitmans*** after Golubchik and Trincher left Monarch" (emphasis added), also is non-actionable because neither David nor Jacob Gitman is a plaintiff in this matter, and Jacob Gitman was not even an owner of Monarch when the Article was published. *See infra* case law establishing that a statement about an individual is *not* a statement about a company. If the purported implication is that Monarch is "unworthy of government contracts," that is a protected opinion. *Turner II*, 879 F.3d at 1262; *see also Suulutaaq, Inc. v. Williams*, 782 F. Supp. 2d 795, 810 (D. Alaska 2010) (implication that plaintiff was "not qualified" to perform government contracts "is too subjective to form the basis of a defamation claim").

8

explained, in *Turner II* it "rejected a plaintiffs' claim of defamation by implication, emphasizing that courts afford news media editorial discretion." *Nix v. ESPN, Inc.*, 772 F. App'x 807, 814 (11th Cir. 2019); *see also Turner I*, 198 F. Supp. 3d at 1371 ("Courts must be slow to intrude into the area of editorial judgment . . . . Accounts of past events are always selective, and under the First Amendment the decision of what to select must almost always be left to writers and editors. It is not the business of government.") (internal quotation omitted). The R&R discounts JDN's right to exercise editorial judgment and report *true* facts as it deems best.

Where the R&R addressed Monarch's actual allegations, it rejected Monarch's argument that two statements in the Article created a defamatory implication by omission. Those two statements were (1) a description of an incident where 16 kilograms of cocaine was found on a Monarch flight and (2) a statement by the prosecutor at a 2014 bail hearing that the government did not consider Monarch to be a legitimate business. *See* JDN's Motion at pp. 16-20; R&R at 11, 13. Despite finding that these statements did not impliedly defame Monarch, the R&R again employed faulty logic, reasoning that because these statements allegedly go the larger "gist or theme" of the Article as a whole, a common reader could conclude that Monarch in 2020 was connected to "criminals, fraudsters and/or criminal activity." R&R at 12, 14.[2]

Finally, the R&R hints that purported implications about Monarch's current *owner* can support an implication claim by *the company*, but this too is erroneous. *See Jones v. Cmty. Newspapers, Inc.*, No. 3:05-cv-240-J-16MMH, 2006 WL 2507610, at *3 (M.D. Fla. Aug. 29, 2006)

---

[2]    It is ***true***, moreover, that Monarch's past owners "played some role in criminal or legal wrongdoing" or were "connected" to "criminals, fraudsters and/or criminal activity," since those past owners *included* criminals and fraudsters. The Article *expressly* reports these facts and they must be deemed as true to support an implication claim. *Sloan v. Shatner*, No. 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018) (to state a viable defamation by implication claim, the complaint must "allege that the underlying statements are true").

9

(In order to sustain a cause of action for defamation, "the publication must be 'of and concerning'" the plaintiff). Statements about individuals are not "of and concerning" a business for purposes of a defamation claim and are therefore not actionable by Monarch. *See Ludwin v. Proman*, No. 20-CV-81755-RS, 2023 WL 2401774, at *4 (S.D. Fla. Jan. 24, 2023) (statements about Ludwin, an attorney, were not about Ludwin Law Group, his business); *see also Jones*, 2006 WL 2507610, at *1, *3 (granting summary judgment on defamation claim where statement that two Jones brothers indicted for conspiracy and distribution of crack cocaine were the owners of "Jones Trucking on State Road 17 in Palatka," was not of and concerning the trucking company); *Church of Scientology of Cal. v. Flynn*, 578 F. Supp. 266, 268 (D. Mass. 1984) (applying Florida law: defamatory statement about individual members of Church of Scientology was not statement about the Church itself); *McIver v. Tallahassee Dem., Inc.*, 489 So. 2d 793 (Fla. 1st DCA 1986) (holding allegedly defamatory statement that "McIver, President of Southeastern Realty, has testified before a federal grand jury in Tampa investigating bribery and kickbacks," was not a statement of and concerning his company, Southeastern Realty). Thus, inasmuch as the R&R concludes that the Article implies a connection between Monarch's current owner, David Gitman, and Monarch's prior owners, such an implication is not actionable because it is not "of and concerning" Monarch. It is also not actionable because it is true (as discussed below).

III.    **A False Statement Of Fact Is Necessary To Support A Defamation Claim, But The R&R And The Complaint Fail To Identify Any <u>False Fact</u> Implied By The Article.**

Under the First Amendment, Monarch's implication claim must be considered "against the background of a profound national commitment" to freedom of speech that is "essential to the security of the Republic." *Flynn v. Wilson*, 398 So. 3d 1103, 1100 (Fla. 2d DCA 2024) (citation omitted). The R&R, if adopted, would impose impermissible limits on JDN's editorial judgment and ability to report on matters of public concern, in violation of the First Amendment.

**A.      True Statements **And** Non-Factual Statements Are Not Actionable In Defamation.**

"A false statement of fact is absolutely necessary if there is to be recovery in a defamation action." *Zorc v. Jordan*, 765 So. 2d 768, 771 (Fla. 4th DCA 2000) (internal quotation omitted); *see also Turner II*, 879 F.3d at 1267 (a "false statement of fact is the *sine qua non* for recovery in a defamation action"); *Byrd,* 433 So. 2d at 595 (same). Moreover, "[a]ccording to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999). The material falsity requirement is not merely a matter of Florida law. Rather, it is a constitutional requirement, because "[t]rue statements . . . are protected from defamation actions by the First Amendment." *Turner II*, 879 F.3d at 1262.

Thus, for Monarch's defamation by implication claim to survive, the Article must, at a minimum, imply some defamatory *fact* about Monarch that is *false*. A statement of fact is one that is "subject to empirical verification." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 697 (11th Cir. 2016). Thus, an allegedly defamatory "implication is only actionable if it is provably false." *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023). Non-factual assertions or implications will not support a defamation claim. *See, e.g.*, *Grlpwr, LLC v. Rodriguez*, No. 3:23cv16480-TKW-HTC, 2023 WL 5666203, at *5 (N.D. Fla. Aug. 25, 2023) (Statements that the plaintiff's practices are "'a little bit pyramid schemy' and 'a little scammy' ... are not actionable because they are inherently vague and imprecise and cannot be proven true or false."); *Turner I*, 198 F. Supp. 3d at 1372 (defendant's statement that the plaintiff was "unprofessional" was not "a false statement of fact" because it was "not provably false").

Moreover, a statement may be defamatory (*i.e.*, it may injure one's reputation) but not be false. For example, stating that the plaintiff is a murderer is a defamatory statement of fact, because

it would harm the plaintiff's reputation to be known as a murderer. But if the statement is true – in other words, if the plaintiff is in fact a murderer – the statement is not actionable. To be actionable, the statement must not only be defamatory, it must also be both false *and* a statement of fact.

**B.     The Article Does Not Imply A False Fact.**

The R&R essentially focuses exclusively on whether the Article implies something defamatory (*i.e.*, injurious to reputation) and wholly disregards whether it is false and factual. Indeed, the R&R's DISCUSSION section (pages 7-15), where the Article is subjected to legal analysis, states that the Article is impliedly "defamatory" on nearly every page. But the DISCUSSION section never mentions whether the Article implies a false fact. In other words, it skips the central issue in every defamation claim – whether the defendant published a false statement of fact about the plaintiff.

One reason the R&R fails to grapple with falsity is that the defamatory implication it identifies is not a statement of fact. According to the R&R, the actionable implication is that Monarch in 2020 remains "*connected* to criminals or criminal activity." R&R at 15 (emphasis added). The R&R also notes that Monarch's Complaint alleges that the Article implies "a defamatory *connection* between Monarch, criminals, and/or criminal activity." R&R at 2 (quoting Complaint; emphasis added). But whether Monarch has a "defamatory connection" or is otherwise "connected" to criminals or criminal activity is "inherently vague and imprecise and cannot be proven true or false." *Rodriguez*, 2023 WL 5666203, at *5. It cannot be proven because the word "connected" is so indefinite that it is not an objectively verifiable statement of fact.

To understand why the purported implication that Monarch is "connected" to criminals or criminal activity is not a statement of fact, the simplest approach is to ask: What does it mean to be "connected" to criminals or criminal activity?

According to the R&R, one possible meaning is that "Golubchik and Trincher remain connected to Monarch and/or D. Gitman." R&R at 10. Of course, by again using the word "connected" here, the R&R simply begs the question – what does it mean? The meaning cannot be that the Article implies that Golubchik and Trincher are owners of Monarch in 2020, because the Article repeatedly and expressly states otherwise. *See Turner II*, 879 F.3d at 1270 (plaintiff's defamation by implication claim "fails in light of the express words in the Report").

If the meaning is that Golubchik and Trincher in 2020 might still be business partners with Jacob Gitman (the *former* owner of Monarch), the Article also expressly addresses that matter:

> Jacob Gitman told OCCRP he had met Golubchik in 2006, but declined to explain how. He said he had never met or spoken with Trincher. "I don't have any business relations with them since 2013," he said in an email.

> However, public records show that Gitman partnered with Golubchik and Trincher in at least four aviation companies. Panama-based SkyWay International Holding still lists all three men as corporate officers. Gitman said the Panamanian company was never active, and had never facilitated any transactions or opened bank accounts.

ECF No. 1-2; Compl. Exh. A at p. 26.  Put another way, the Article expressly reports (1) that public records show that Jacob Gitman is still business partners with Golubchik and Trincher, but (2) Jacob Gitman denies actually knowing Trincher and denies that the businesses in question was ever active. This type of reporting is central to news reporting – court files, public records, SEC filings, or other documents might say one thing, but the subject of the news article might deny their accuracy. By construing this type of reporting as creating a "defamatory implication," the R&R would, if adopted by this Court, impose an alarmingly chilling effect on the news media, making it nearly impossible to report public record information whenever anyone challenges its accuracy. The R&R does not cite to any case law holding that a report on the content of public records followed by the subject's denial of their accuracy creates an actionable implication. Nor is JDN aware of any such precedent.

Perhaps the R&R uses the word "connected" to mean that Monarch's current owner, David Gitman," is "connected" to his father since they are in the same family, and his father is "connected" to Golubchik and Trincher because he was business partners with them from 2008 to 2012. But if that is what "connected" means, it is both true (and thus not actionable) and also expressly stated in the Article (and thus not *implied by* the Article and, therefore, not actionable as defamation by implication). *See Barbuto v. Miami Herald Media Co.*, No. 21-cv-20608-BLOOM/Otazo-Reyes, 2022 WL 123906, at *5 (S.D. Fla. Jan. 13, 2022) (explaining that a publication's express statement "cannot form the basis for defamation by implication").

The fact of the matter is that whether a company is "connected" to particular people or events is not an objectively verifiable factual statement unless and until "connected" is clearly defined. For example, is ExxonMobil Corporation today "connected" to the Exxon Valdez oil spill from 1989? It depends on what "connected" means. The event occurred 36 years ago and Mobil Corporation was *not* part of Exxon Corporation at the time, so does that make it false to say that ExxonMobil today is "connected" to the Valdez incident? There is no right or wrong answer, because the statement is inherently vague and imprecise, rather than being factual and verifiable.

By using the vague word "connected," and by failing to define it, the R&R simply sidesteps the question of whether the Article implies a false fact about Monarch. And it also makes it impossible for JDN to defend itself. Because the R&R does not identify a false fact purportedly implied by the Article, the R&R's analysis is wrong and should be rejected. *See Turner I*, 198 F. Supp. 3d at 1372 (statement that is "not provably false" cannot be a false statement of fact and cannot support a defamation claim); *Trump*, 684 F. Supp. 3d at 1276 ("A connotation or implication is only actionable if it is 'provably false.'").

**IV.     The Article Does Not Juxtapose True Facts To Create A False Implication.**

As noted above, a defamation by implication claim arises "in circumstances where *literally true* statements are conveyed in such a way as to create a *false impression*." *Rapp*, 997 So. 2d at 1108 (emphasis added). Florida courts recognize a claim for defamation by implication in two circumstances: (1) where a defendant "juxtaposes a series of facts so as to imply a defamatory connection between them" or (2) where a defendant "creates a defamatory implication by omitting facts." *Id.* at 1106. Here, the R&R finds that the Article does not create a false implication by omitting facts. *See* R&R at 11-15. Instead, the R&R concludes that the Article implies a "defamatory connection" between Monarch and criminals or criminal activity by juxtaposing true facts. But as shown below, the Article does no such thing.

There is limited case law in Florida – or anywhere else, for that matter – explaining how a court should assess whether true facts are "juxtaposed" in such a way as to create a false implication. In *Readon v. WPLG, LLC*, 317 So. 3d 1229 (Fla. 3d DCA 2021), however, the Third District Court of Appeal provided the most detailed guidance to date in Florida. In that case, the plaintiff (Readon) sued for defamation by implication, among other things. Readon was a pastor, but because he was not paid for that work, he made a living through business dealings primarily related to real estate. Readon was sued by several business contacts relating to real estate deals.

WPLG reported on these various legal disputes. During each broadcast, WPLG referred to Readon as a "pastor." In his defamation by implication claim, Readon alleged that WPLG "improperly juxtaposed his business dealings as a private person with his role as a pastor, thereby implying that the acts were committed in his role as pastor." *Id.* at 1237.

The Third District rejected Readon's implication claim, explaining that "Readon's argument would result in a substantial chilling effect on the freedom of the press." While discussing the free speech problems with Readon's claim, the court observed that:

> A classic example of defamation by implication was before the Second District in *Heekin v. CBS Broad., Inc.*, 789 So. 2d 355, 358 (Fla. 2d DCA 2001). In *Heekin*,[3] the plaintiff alleged that a broadcast falsely portrayed him as a spouse abuser by juxtaposing an interview with his former spouse along with stories and pictures of women who had been abused and killed by their partners. 789 So. 2d at 357. Even though the reporting did not literally claim that the plaintiff was a spouse abuser, by overplaying his former wife's story with stories of spouse abuse, the reporting created the defamatory implication that the plaintiff had abused his spouse. Conversely, Readon has alleged no such defamatory implication. The negative statements about Readon, that he was engaged in potentially underhanded business dealings, were not implied but rather stated explicitly. The reporting of Readon's profession did not make these stories about Readon any more or less negative, but rather gave the public a context for why the stories were relevant.

*Id.* at 1237-38; *see also Reed v. Chamblee*, No. 3:22-cv-1059-TJC-PDB, 2023 WL 6292578, at *8-*9 (M.D. Fla. Sep. 27, 2023) (citing *Heekin* for the same analysis of juxtaposition).

Here, the Article does not include the type of juxtaposing of unrelated true facts that occurred in *Heekin*. Instead, the Article reports, among other things, on the criminal history of a group of former Monarch owners, while making clear, repeatedly, that those individuals are no longer owners of Monarch. In fact, not only does the Article repeatedly report that the individuals with criminal problems are no longer owners, it provides a timeline visually illustrating when each gave up his ownership interest in the company and showing that, as of 2020, Monarch has only one owner, David Gitman:

---

[3] The *Readon* court observed that *Heekin* involved a claim for false light invasion of privacy, not defamation by implication, but explained that "the Florida Supreme Court has noted that nearly all such claims could have been brought as defamation by implication." *Id.* at 1237, n.2 (citing *Rapp*, 997 So. 2d at 1113).



*See* ECF No. 1-2; Compl. Exh. A at 27.

In *Heekin*, the plaintiff's ex-wife, who was not the victim of abuse, was shown along with unrelated women who had been the victims of spousal abuse or who had been killed by their spouses. Unlike Heekin's ex-wife, however, present-day Monarch is not wholly "unrelated" to its prior owners. Those prior owners are an incontrovertible part of its history. Moreover, for several years, Monarch's current owner, David Gitman, was a co-owner of Monarch along with previous owners Jacob Gitman and Boruch Freedman. And, of course, he is the son of Jacob Gitman. The R&R seems to operate under the assumption that the Article *should have stated* that David Gitman has no relation to the previous Monarch owners, but if the Article had made that representation, it would have been patently false. Obviously, Monarch cannot be required to report false facts about the past in order to avoid a purported negative implication about Monarch in the present. If the conduct of Monarch's past owners makes Monarch look bad, that is a result of such conduct, not JDN's reporting, and does not constitute actionable defamation. *See, e.g.*, *Kurtell & Co. v. Miami*

*Tribune, Inc.*, 193 So. 2d 471, 471 (Fla. 3d DCA 1967) ("The fact that plaintiffs may not like the way the article was written or what it says about them does not automatically provide the basis for a libel suit."). Moreover, Monarch's history of criminal ownership is critical to the Article, which investigates the fact that the federal government has been contracting with Monarch since 2012 to provide sensitive government services. In other words, it gives "the public a context for why the stories [are] relevant." *Readon*, 317 So. 3d at 1238.

Another error that the R&R makes is deriving a defamatory implication from protected opinions related in the Article. In particular, the Article reports that Monarch obtained some of its federal government contracts in 2014, the year after Golubchik and Trincher were arrested, and while Jacob Gitman and Boruch Freedman were still owners of the company. It likewise reports that "Monarch has carried out various tasks for U.S. authorities, including carrying protected witnesses for the Marshals Service and transporting fuel in Israel for the Department of Defense" and that, in 2017, "the Marshals Service twice hired Monarch to transport people in the witness protection program and the Justice Prisoner and Alien Transportation System." [ECF No. 1-2; Compl. Exh. D at p. 67, 68, 75] The Article then reports the opinion of Gary Kalman about these facts, along with Monarch's response:

> Gary Kalman of Transparency International said the fact that Monarch was able to transport protected witnesses, despite the dubious backgrounds of its ***former owners***, shows the need for more thorough checks on companies that are awarded public contracts.

> "Common sense says that contracts should be clearly vetted before going to entities with a ***history of criminal affiliation***, but there is no legal mandate that we check," he said. "That is a significant gap in the law, and this story is a prime example of how such a gap might be dangerously exploited."

> The Marshals declined to comment, saying the GSA was responsible for vetting the company. Monarch's spokesperson said the company was audited by the GSA as a vendor in 2013 and ***won its contracts "with full transparency and open competition."***

*Id.* at 76 (emphasis added).

Mr. Kalman's opinion is based upon disclosed true facts, meaning that JDN's reporting of his opinion is fully protected by the First Amendment. *Turner II*, 879 F.3d at 1262. But despite this incontrovertible legal reality, the R&R jumps to the unsupported conclusion that by including Mr. Kalman's opinion, the Article is "implying that the former [*i.e.*, the company's history of criminal affiliation] should preclude the latter [*i.e.*, transporting protected witnesses for the U.S. government]." The Article *implies* no such thing – instead, Mr. Kalman *expressly* states his view that the government should more thoroughly vet its vendors. By using Mr. Kalman's opinion to bolster the conclusion that the Article can be read as impliedly defaming Monarch, the R&R either disregards or misunderstands controlling law, which provides that "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner II*, 879 F.3d at 1262 (emphasis added).

The Article never juxtaposes facts about Monarch with facts unrelated to Monarch, as happened in *Heekin*. When the R&R concludes that the Article uses juxtaposition to create a false impression, what it really seems to mean is that the Article includes too much unflattering information about Monarch, thus leaving readers with a negative impression of the company. For example, the R&R states that another implication from the Article is that "the criminal or fraudulent activity of Monarch and its owners is not limited to Golubchik and Trincher." R&R at 10. But this is not something the Article implies; it is again something the Article expressly states. As the Article reports, one of Monarch's former owners, Boruch Freedman, "fled a warrant for his arrest in the U.S. and remains on the lam," while another former owner, Jacob Gitman, was found liable for fraud in a civil lawsuit and has a $3.8 million judgment against him. Because the Article expressly reports these facts, they cannot constitute defamation by implication as a matter of law.

*Readon*, 317 So. 3d at 1237 (rejecting implication claim where challenged statement was expressly stated, not implied); *Barbuto*, 2022 WL 123906, at *5 (publication's express statement "cannot form the basis for defamation by implication"). The R&R overlooks this law, which establishes that, so long as JDN's reporting does not purposely make false statements about Monarch, JDN is "not required to balance its reporting with potentially mitigating factors." *Readon*, 317 So. 3d at 1236; *Turner I*, 198 F. Supp. 3d at 1371 (so long as "the facts that a defendant reports are truthfully presented and [the defendant] did not omit facts . . . the court's inquiry should go no further").

In sum, the R&R recognizes that Monarch's history does not reflect well on the company. But the R&R errs by concluding that JDN could be at fault for reporting that history truthfully. The First Amendment provides JDN – and all speakers – with far more latitude to report truthful facts as they see fit. The R&R should be rejected.

## CONCLUSION

WHEREFORE, JDN respectfully requests that the Court reject the Report and Recommendation and grant Defendant's Motion for Partial Judgment on the Pleadings as to Count II of the Complaint.

THOMAS & LOCICERO PL

By: */s/ Dana J. McElroy*
Dana J. McElroy
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
Daniela Abratt-Cohen
Florida Bar No. 118053
dacohen@tlolawfirm.com
915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone (954)703-3416

James J. McGuire
Florida Bar No. 187798
jmcguire@tlolawfirm.com

601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

*Attorneys for Defendant Journalism*
*Development Network, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **2nd** day of **June**, **2025**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ *Dana J. McElroy*
Attorney