# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC,              CASE **NO.: 23-cv-61256-JB**
A Florida Limited Liability Company,
       Plaintiff,

v.

JOURNALISM DEVELOPMENT
NETWORK, INC., a Maryland Corporation,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO JOURNALISM DEVELOPMENT NETWORK, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION [D.E. 173].

Plaintiff, Monarch Air Group, LLC ("Monarch"), responds in opposition to Journalism Development Network, Inc.'s ("JDN") Objections To Report and Recommendation ("R&R").

## INTRODUCTION AND BACKGROUND

Monarch, a respected leader in the private jet brokerage industry, sued JDN for publishing a defamatory article titled *Flight of the Monarch: US Gov't Contracted Airline Once Owned by Russian Criminals*, on November 27, 2020, through the Organized Crime and Corruption Reporting Project ("OCCRP") and its Russian-language affiliate, istories.com. Complaint [D.E. 1-2 at pp. 7-17 ¶¶ 1, 20-31]. The article is a series of misleading statements and insinuations that falsely advocate Monarch's continuing involvement with criminal actors, including ties to the Russian Mafia. These defamatory implications have caused significant reputational harm to Monarch and its leadership.

Following publication, Monarch promptly notified JDN about the article's material inaccuracies and misleading content. [D.E. 1-2 at pp. 7-17 ¶¶ 5-15]. Yet rather than acting responsibly, JDN's response was belated, evasive, and inconsistent with its own editorial standards. *Id*. Despite admitting that the article contained inaccuracies, JDN failed to engage an independent fact-checker—contrary to its stated internal policies—and ultimately allowed the article to remain online with only minor edits, perpetuating a false and damaging narrative. *Id*.

The Magistrate Judge correctly determined that Monarch's Complaint states a plausible defamation by implication claim and recommended denying JDN's motion for judgment on the pleadings. [D.E. 172]. In objecting to that recommendation, JDN largely rehashes arguments that the Magistrate carefully considered and properly rejected. [D.E. 173]. At the same time, JDN's objections go further—they introduce several new arguments not previously raised in its original motion, including the new argument that defamatory implications relating to the Gitmans cannot satisfy the "of and concerning" element as to Monarch, and that Monarch failed to provide sufficient notice of the allegations. These arguments were not briefed before the Magistrate and may be disregarded on that basis alone. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge").

JDN's objections also mischaracterize the legal standard and misrepresent the nature of the allegations. They continue to isolate discrete statements in the Article and ignore how those statements, when read together, construct a false narrative—precisely the kind of implication-

based harm recognized under Florida defamation law. JDN conflates defamation per se, which focuses on a specific allegation, with defamation by implication, which considers the publication as a whole and the impression it leaves on the reasonable reader. The suggestion that the Article cannot be defamatory because it contains some technically accurate statements or caveats has already been rejected by the Magistrate Judge, and for good reason. As the Second District held in *McQueen v. Baskin*, 377 So. 3d 170, 178 (Fla. 2d DCA 2023), even true statements or disclaimers do not shield a publication from liability where "the context of the statements swallows up the caveats." That is precisely the case here.

The Article does not simply recite unpleasant facts—it crafts a narrative through selective emphasis, omission, and framing that gives rise to a materially false implication: that Monarch, under its current leadership, remains entangled with organized crime and does not timely pay its workers. For example, the Article juxtaposes Monarch's government contracts with references to prior criminal owners, a prosecutor's statement from an unrelated case, and a years-old cocaine trafficking incident in which it also falsely portrays the drugs as being hidden by Monarch—even though none of these bear relevance to Monarch's present operations. Including this content casts Monarch in a more negative light and goes well beyond merely "providing context." These editorial decisions are not innocent—they are deliberate, and they are actionable.

JDN now seeks to play the role of victim, claiming they are simply being punished for accurate reporting. But this is not about truthful journalism—it is about distortion. JDN is not the factfinder in this case, and their self-serving interpretation of the Article's meaning does not negate the Plaintiff's well-plead allegations or the Magistrate's sound legal analysis. Of course, JDN insists the Article is not defamatory—if it didn't, the parties wouldn't still be before this Court. But disagreement is not a ground for *de novo* review. *See United States v. Ibanez-Molina*, 759 F. Supp. 3d 1272, 1282 (S.D. Fla. 2024) ("However, a party's objections are improper **if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions**.") (emphasis added).

Contrary to JDN's assertion, Plaintiff is not asking for reporting that includes "mitigating factors" to soften the impact of uncomfortable facts. Florida law entitles Plaintiff to fair and reasonable reporting—not the selective presentation of true facts in a way that conveys a false, politically-biased and defamatory implication. This Article falls grossly short of that standard. The Magistrate Judge correctly recognized this and saw through JDN's attempts to mask editorial

implication as neutral fact-sharing.

Especially when accepting Monarch's well-pleaded allegations as true and viewing them in light most favorable to the non-movant, the R&R appropriately concluded that, when read in its entirety, the Article plausibly conveys a false and defamatory implication about Monarch. JDN's attempt to relitigate previously rejected points—while simultaneously introducing new ones—fails to present any appropriate basis for disturbing that finding. The objections should be overruled in full.

## DISCUSSION

### I. Legal Standard

A party may object to a magistrate's R&R withing fourteen days from being served with it. *See* 28 U.S.C.A. § 636(b)(1). The district judge must make a de novo determination for the parts the party objects to and can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See United States v. Ibanez-Molina*, 759 F. Supp. 3d 1272 (S.D. Fla. 2024) (citation omitted); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (citation omitted) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review).

"Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Att'y's Off.*, 592 F.3d 1237, 1255 (11th Cir. 2010). A court ruling on a 12(c) motion must "accept all the facts in the [pleadings] as true and view them in the light most favorable to the nonmoving party." *Id*. A motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss under Rule 12(b)(6), as described above." *Ray'Quan Harding v. Transunion LLC & others*, No. 23-23775-CIV, 2024 WL 4826448, at *4 (S.D. Fla. Nov. 19, 2024) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).

### II. The R&R's Findings and Conclusions are well within the law and the Complaint

Florida recognizes a cause of action for defamation by implication. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123–24 (S.D. Fla. 2021) (citing *Jews For Jesus, Inc. v. Rapp*,

997 So. 2d 1098 (Fla. 2008)). "Defamation by implication arises, **not from what is stated**, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts...." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014) (citing Jews for Jesus, 997 So. 2d at 1106) (emphasis added). The inquiry turns on whether the 'gist' of the publication is false. *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (citing *Jews for Jesus, Inc.*, 997 So. 2d at 1107-08) (explaining that liability attaches to a defendant who has the details right but the "gist" wrong).

In other words, "[d]efamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising *from otherwise truthful statements*." *Jews for Jesus*, 997 So. 2d at 1107 (citation and quotation omitted) (emphasis added). Moreover, an implication is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Jews For Jesus, Inc.*, 997 So. 2d at 1109. The relevant "community" is a plaintiff's "personal, social, official, or business relations." *Id*. at 1115 (quoting *Land v. Tampa Times Publ'g Co*., 67 So. 130, 130 (Fla. 1914)). "[W]hether the statement in question from [the Article] created a false impression rising to the level of defamation by implication is a fact-based inquiry left to the province of the jury." *Akai Custom Guns, LLC v. KKM Precision, Inc*., 707 F. Supp. 3d 1273, 1295 (S.D. Fla. 2023).

     a.  **The Alleged Factual Statements And Omissions Supporting the Implication Claim Are Pled With Specificity.**

JDN's objection hinges on the erroneous assertion that Monarch failed to plead its defamation by implication claim with the requisite specificity. This argument ignores the structure and substance of the Complaint, which repeatedly and clearly alleges that the Article as a whole— through its selective omissions, juxtaposition of facts, and overarching narrative—conveys a false and defamatory implication. Defamation by implication is not confined to isolated phrases or sentences, nor does it require pinpointing a single provably false statement. *See Jews For Jesus, Inc*., 997 So. 2d at 1107 ("Defamation by implication is premised **not on direct statements** but on false suggestions, impressions and implications arising from otherwise truthful statements") (emphasis added). Instead, it arises from the gist or overall impression created by the publication when taken in context. *See Turner* at 1269. Paragraphs 28 through 52 of the Complaint detail not only the express statements Monarch alleges to be false or misleading, but also how those

STOK KON + BRAVERMAN

1 East Broward Blvd, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

statements collectively imply a broader, defamatory narrative: that Monarch is still entangled in criminal activity and should be excluded from government contracting on that basis. Monarch explicitly alleges, for example, that the Article omits key exculpatory facts, [D.E. 1-2 at pp. 7-17 ¶¶ 35–36], misquotes Monarch to reinforce a defamatory message, *Id.* ¶¶ 39–41, and deliberately ties Monarch's current leadership to criminal figures no longer associated with the company for over eight years, *Id.* ¶¶ 33–34, 42–44.

Paragraph 50 makes clear that Monarch's claim is not limited to specific sentences but targets the entire Article, stating: "The Article, as a whole, is defamatory, and even the true statements contained therein are defamatory because of the context and the light in which they are published." [D.E. 1-2 at pp. 7-17 ¶ 50]. This framing directly invokes the standard from *Jews for Jesus*, *Readon*, and *Turner*, which all confirm that defamation by implication focuses on whether a publication, when read in full and in context, conveys a materially false impression. JDN's attempt to reframe the Complaint as if it solely advances a defamation per se theory tied to discrete statements misapprehends the nature of the claim and ignores the thorough factual allegations that gave JDN notice of the defamation by implication theory it now protests. In short, JDN was on clear notice of the claim, and its objections are merely an effort to relitigate legal theories already considered—and correctly rejected—by the Magistrate Judge.

### b.  The R&R Does Not Rewrite Plaintiff's Complaint.

JDN's objections to the R&R reflect little more than dissatisfaction with a ruling that faithfully applied the law and appropriately denied their motion. Rather than engage with the R&R's legal reasoning, JDN misrepresents the analysis by suggesting that the Magistrate Judge improperly focused on specific statements rather than assessing the Article "as a whole." This is a deliberate distortion of both the R&R and the legal standard governing defamation by implication. The Magistrate did exactly what precedent requires: he considered the Article in its totality and identified specific statements that, when juxtaposed and contextualized, plausibly give rise to a defamatory implication. [D.E. 172 at 7]. To suggest otherwise defies common sense. Of course, the Magistrate's analysis will reference particular statements—how else could it illustrate the defamatory impression conveyed by the publication's overall gist? JDN's position effectively asks the Court to ignore the necessary building blocks of an implication analysis in favor of a selective, atomized reading of the Complaint. But as the R&R makes clear, those statements were not viewed in isolation—they were analyzed in context, in line with well-established Eleventh Circuit and

Florida precedent. JDN's objections thus amount to little more than an effort to relitigate issues already briefed, considered, and properly rejected. Their arguments are not grounded in law; they reflect a transparent attempt to avoid the implications of a thorough and correct judicial ruling.

JDN's assertion that it was not on notice of the statements referenced in the R&R is disingenuous. As mentioned above, the Complaint alleges that the defamatory implication arises from the Article as a whole, not from any isolated sentence or quotation. [D.E. 1-2 at pp. 7–17 ¶ 50]. Monarch's allegation unambiguously notified JDN that Monarch's defamation by implication claim targets the overall gist and impact of the Article—precisely what Florida and Eleventh Circuit law require and allow in such cases. Further, paragraphs 28 through 52 methodically identify the statements Monarch contends are false or misleading and explain how, when combined, they construct a defamatory narrative implying that Monarch remains connected to criminal activity and is unfit for government contracts. And this case was originally filed and actively litigated in Florida state court, where Florida's notice pleading standard governs. JDN therefore had full notice of the claims and the allegedly defamatory narrative well before removal and cannot now feign surprise under a more stringent federal pleading standard that does not retroactively erase the sufficiency of the original state court pleading.

The Complaint alleges, for instance, that the Article omits material exculpatory facts [D.E. 1-2 at pp. 7–17 ¶¶ 35–36], misquotes Monarch in a way that reinforces a misleading narrative [*Id.* at ¶¶ 39–41], and unjustifiably links Monarch's current leadership to individuals with whom the company severed ties nearly a decade ago [*Id.* at ¶¶ 33–34, 42–44]. These allegations, taken together, form the core of a defamation by implication claim. JDN's attempt to recast the Complaint as relying solely on a handful of cherry-picked statements ignores this context entirely and reflects a deliberate effort to avoid the substance of the claim. The R&R rightly recognized that the alleged defamation stems from how the Article frames and combines otherwise factual elements to convey a materially false and defamatory impression. JDN's feigned confusion is not only unsupported—it is demonstrably at odds with the clear structure and content of the Complaint.

Setting aside JDN's meritless assertions that the Magistrate "rewrote" the Complaint, what remains is nothing more than JDN disagreeing with the Magistrate Judge's well-reasoned R&R. In particular, JDN repeats its previously rejected claim that "[j]ust as critically, the Article expressly disavows the alleged implications found by the R&R." [D.E. 173 at pp.7]. But this argument has already been considered and squarely rejected by the Magistrate. The Magistrate

recognized that while the Article includes certain express statements acknowledging, for instance, that former owners left Monarch in 2012, these statements do not preclude a reasonable jury from concluding that the Article—as a whole—implies that Monarch remains entangled with criminal actors or activities. The R&R specifically states that a reasonable jury could conclude the article implies Monarch remains connected to individuals involved in criminal activity, including Golubchik, Trincher, and David Gitman, despite JDN's caveats. [D.E. 172 at pp. 10, 12]. The Magistrate emphasized that JDN's caveats do not overcome the overall defamatory implication created by the article's context, structure, and tone—particularly its repeated juxtaposition of past criminal conduct with Monarch's present-day government contracts. *Id*. The Magistrate Judge also noted that isolated references, such as a cocaine incident or a prosecutor's speculative remark, contribute to the article's broader theme: that Monarch is not a legitimate company due to its ongoing ties to individuals associated with criminal wrongdoing. *Id*.

At bottom, JDN is merely recycling an argument the Magistrate has already considered and rejected. Its objection fails to meaningfully engage with the R&R's thorough and legally grounded analysis. Rather than addressing the core of Monarch's defamation by implication claim, JDN seeks to improperly reframe it as a defamation per se claim focused solely on discrete statements. But the Magistrate correctly recognized that the claim is not about isolated language—it is about the *overall impression* conveyed by the Article when read in its entirety. In line with longstanding precedent, the Magistrate Judge found that JDN's so-called "caveats" do not insulate the publication from liability. To the contrary, the R&R explicitly concluded that those disclaimers are "not enough to overcome" the defamatory implication, particularly where, as here, "the context of the statements swallows up the caveats." R&R at 10 (citing *McQueen*, 377 So. 3d at 178). JDN's attempt to repackage this already rejected argument underscores its unwillingness to acknowledge the core principle of defamation by implication: that liability may arise not from what is explicitly said, but from what is *communicated* through omission, juxtaposition, and tone. The R&R applied this standard correctly, and JDN offers no valid basis to disturb that finding.

JDN again attempts to rehash and continues to misguidedly rely on *Turner v. Wells*, 198 F. Supp. 3d 1355, 1366 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018), and *Utterback v. Morris*, No. 5:23-CV-279-TKW/MJF, 2024 WL 3809368 (N.D. Fla. July 24, 2024), report and recommendation adopted, No. 5:23-CV-279-TKW-MJF, 2024 WL 3799423 (N.D. Fla. Aug. 12, 2024), for the position that "[i]n light of these repeated express statements that Golubchik and

Trincher are former owners no longer affiliated with Monarch, an implication claim based upon the idea that the Article implies that Golubchik and Trincher are somehow still 'connected' to Monarch fails as a matter of law." [D.E. No. 173 at pp.8]. Such reliance, just as before, is misplaced. JDN omits that in the Magistrate's analysis of whether the Statements constitute defamation by implication, "the inquiry turns on whether the 'gist' of the publication is false." *Turner*, 879 F.3d at 1269 (citing *Jews for Jesus, Inc*., 997 So. 2d at 1107-08) (explaining that liability attaches to a defendant who has the details right but the "gist" wrong). [1]

As recognized in *Utterback*, "[a]lthough the tense of the words employed by Defendant **is not** dispositive, it is highly relevant." *Utterback*, 2024 WL 3809368, at 4 (emphasis added). While JDN uses past tense in parts of the Article, the overarching narrative is clear and the Magistrate properly recognized it: Monarch has a questionable history, and that history is worth scrutinizing and exposing, even into the present and future. [D.E.172 at 9]. This raises the question, which remains unanswered: what was JDN's objective in writing the Article? What did they hope to achieve by recounting allegations from years ago, especially when they assert that those events have no present-day connection to Monarch? The Article's entire premise is that Monarch should receive more scrutiny before receiving government contracts because its former owners were convicted. Either the Article implies Monarch is connected to criminals or the Article serves no public purpose.

JDN then gives short reference, seeming to try to paint the picture that the Magistrate

---

[1] JDN misguidedly attempts to sidestep liability through a footnote, asserting that "[t]he purported implication identified by the R&R—that Golubchik and Trincher remained connected to Monarch and/or the Gitmans after Golubchik and Trincher left Monarch—is non-actionable because neither David nor Jacob Gitman is a plaintiff in this matter, and Jacob Gitman was not even an owner of Monarch when the Article was published." *See* Objection at 8 n.1. Simply put, this is not the law. *See Stone v. Shafran,* 641 F. Supp. 3d 1344, 1362 (S.D. Fla. 2022) *(*citing *McIver v. Tallahassee Democrat, Inc.,* 489 So. 2d 793, 794 (Fla. 1st DCA1986)) ("A business entity, may recover for [defamation] just as an individual, where a publication prejudices it in the conduct of its trade or business, deters third persons from dealing with it, **assails its management**, impugns its methods of doing business or inflicts injury on its credit or business'") (emphasis added). It is indisputable that the Gitmans are, and were, part of Monarch's management, and the allegations directed at them in the Article directly assail their integrity—and by extension, Monarch's reputation as a company. The Article goes to great lengths to intertwine the Gitmans with Monarch, both historically and in its present-day operations, presenting their involvement as central to the company's identity and decision-making. Indeed, the entire thrust of the Article focuses on Monarch through the lens of the Gitmans' affiliations and alleged connections, leaving no meaningful separation between the individuals and the entity.

engaged in an inquiry into the decision making of JDN in drafting and posting the Article, but the R&R does not do that. [D.E. 173 at 8-9]. Notably absent from the R&R is any reference or inclusion of the words "why" or "how" or any language questioning JDN's processes, and the R&R even recognizes JDN's broad editorial discretion, but notes that "[h]owever, for the reasons discussed in this Report, a reasonable jury could find that the Article considered in its entirety is capable of the defamatory implication alleged by Plaintiff." [D.E. 173 at 8 n.3]. The R&R does not "discount" JDN's editorial discretion under the first amendment. In fact, it explicitly recognizes it. *Id*. At any rate, the First Amendment does not shield JDN from liability for publishing defamatory implications, and JDN still cannot point to any law that affords such protections.

In fact, case law makes clear that "defamation by implication claims are governed under Florida law by the same privileges and protections afforded traditional defamation claims." *Jews for Jesus, Inc.*, 997 So. 2d at 1108 ("All of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of defamation by implication."); *Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1321 (S.D. Fla. 2020). The U.S. Supreme Court has also held that "there is no constitutional value in false statements of fact. **Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues**." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasis added). "They belong to that category of utterances which 'are no essential part of any exposition of ideas and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

Ultimately, while JDN enjoys broad editorial discretion in selecting and shaping its publications, that discretion is not without limits. As the Supreme Court made clear in *Gertz*, the First Amendment does not shield the press from liability when it disseminates falsehoods that cause harm to private individuals. Here, JDN published an article saturated with factual inaccuracies, misleading omissions, and insinuations that collectively imply Monarch's ongoing involvement with criminal actors. Florida law is unequivocal: defamatory implications arising from the deliberate presentation and framing of otherwise truthful facts are actionable and not protected by constitutional privilege. The R&R properly applied this settled precedent, rejecting

JDN's attempt to cloak defamatory implication in the guise of journalistic freedom. JDN's position is not only legally untenable—it reflects a fundamental misunderstanding of the limits of First Amendment protections in defamation law.

As a final point, JDN argues that "the R&R hints that purported implications about Monarch's current owner can support an implication claim by the company, but this too is erroneous." *See* Objection at 9. Once again, JDN misapplies the law in a transparent attempt to put forth an argument not originally in their Motion, and on its face is legally incorrect. *See Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1270 (S.D. Fla. 2004) ("A corporation can bring a defamation claim in its own name for imputation defamatory to the corporation's stockholders, officers or employees…."); *McIver*, 489 So. 2d at 794. (citing *Kilgore Ace Hardware, Inc. v. Newsome*, 352 So. 2d 918, 920 (Fla. 2d DCA 1977)) ("The appellants urge and we agree that a corporation may recover for libel just as an individual, where a publication prejudices it in the conduct of its trade or business, deters third persons from dealing with it, **assails its management**, impugns its methods of doing business or inflicts injury on its credit or business.") (emphasis added). The implication that defamatory statements directed at Monarch's current owner, David Gitman, are somehow not "of and concerning" Monarch is both legally flawed and factually implausible. The Article repeatedly and deliberately intertwines the Gitmans—both Jacob, as former management, and David, as current management—with Monarch itself, portraying their individual identities as inextricably linked to the company's past and present operations. [D.E. 172 at pp. 9-10]. From start to finish, the Article constructs a narrative in which the Gitmans' alleged criminal associations and questionable integrity are used to cast doubt on Monarch's legitimacy and fitness to conduct government business. *Id*.; [D.E. 1-2 at pp. 22 & 68] ("The company is currently owned by the son of Golubchik and Trincher's former business partner.").

The defamatory implications aimed at the Gitmans—particularly regarding criminal ties and a lack of institutional credibility—are not isolated personal criticisms but are plainly intended to undermine confidence in Monarch as a corporate entity. The suggestion that these statements concern only the individuals and not the company they led or currently lead is not only unsupported by the content of the Article, but directly contradicted by its entire structure and purpose. The Article itself leaves no doubt as to its target: beginning with the title, *Flight of the Monarch: US Gov't Contracted Airline Once Owned by Russian Criminals*, it focuses squarely on Monarch,

using the Gitmans' past and present roles to challenge the company's legitimacy. The only reason the Gitmans are mentioned at all is to impugn Monarch's current operations and question Monarch's government contracts through their associations and history.

The Magistrate Judge recognized this throughout the R&R, correctly concluding that the Article, taken as a whole, conveys a defamatory implication "of and concerning" Monarch. JDN's objection is, in substance, no more than a disagreement with that conclusion—not a showing of legal error. Its attempt to separate the Gitmans from Monarch for purposes of liability is plainly inconsistent with the defamatory narrative the Article constructs and is a transparent effort to evade accountability for a publication whose entire thrust is to call Monarch's integrity into question.

**III.** **The Complaint and the R&R both identify false facts implied by the Article.**

As an initial note, the arguments raised in this Section were not briefed and brought before the Magistrate when ruling on the pleadings by JDN. JDN is now attempting a second bite of the apple by incorporating new case law and arguments into their Objection, which is improper. The Court should disregard these arguments. *See Williams*, 557 F.3d at 1292.

a. **JDN Misstates the Law: Defamation by Implication Requires a Materially False *Gist*, Not a Single Explicit Falsehood.**

JDN fundamentally misstates the applicable legal standard for defamation by implication—the precise theory Monarch pleads, and the Magistrate Judge addressed in the R&R. Although a defamation claim must be grounded in a materially false statement of fact, both Florida law make clear that such falsity may arise not from any single statement, but from the overall implication or inference that a reasonable reader would draw when otherwise technically true facts are presented in a misleading or manipulative manner.

"Even if the words are not literally false, they may still be defamatory if 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them or creates a defamatory implication by omitting facts.'" [D.E. 172 at 5-6] (citing *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022)). Thus, a defamation by implication claim "arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication." *Id*. (citing *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237 (Fla. 3d DCA 2021). The defamation-by-implication "inquiry turns on whether the 'gist' of the publication is false." *Id*. (citing *Turner*, 879 F.3d at 1269).

The Magistrate Judge correctly applied this standard, finding that a reasonable jury could conclude the Article conveys the materially false implication that Monarch, under its current leadership, remains entangled with criminal figures and continues to benefit from or participate in criminal activity. [D.E. 172 at 7]. Not only is that implication provably false but it is highly damaging and falls squarely within the type of misleading narrative that defamation law is meant to redress. And, considering that the allegations are taken as true, the Complaints allegation that Article includes false implications is sufficient to establish that the defamatory implications are false. [D.E. 1-2 at pp. 7-17 ¶¶ 49–52 & 60-62]. The R&R does not merely make a general observation; it goes into explicit detail about how the Article's structure, tone, and selective juxtaposition of facts—such as past criminal conduct by former owners alongside present-day government contracts—fosters a defamatory factual inference. [D.E. 172 at 9, 10, & 14]. This thorough analysis shows how it is implausible for JDN to now claim that no such implication exists. Its effort to isolate individual factual statements and elevate their literal accuracy over the overall defamatory gist not only misapprehends the governing legal framework, but also ignores the procedural requirement to credit well-pleaded allegations at the pleading stage.

JDN's reliance on *Trump v. Cable News Network, Inc.*, *Grlpwr, LLC v. Rodriguez*, and *Michel v. NYP Holdings, Inc*. is inapposite. These cases arise in markedly different factual and legal contexts and do not support JDN's position. In *Michel*, the Eleventh Circuit applied New York law, not Florida law, and the court there specifically found that the statements at issue were not couched in loose, figurative, or hyperbolic language that would alert readers they were not reading a factual news account. *Michel v. NYP Holdings, Inc*., 816 F.3d 686, 700-701 (11th Cir. 2016). That case contrasts with this matter, where—as the Magistrate Judge aptly noted—the article is presented in a formal journalistic tone and structured to appear factual, while employing implication, omission, and misleading juxtapositions to convey a defamatory narrative about Monarch. The Magistrate Judge also properly gave weight to the context in which the Article was published—specifically, on OCCRP's website, whose very name and stated mission are to "expose[] crime and corruption so the public can hold power to account." This contextual framing is not incidental; it reinforces the defamatory implication by signaling to readers that the subjects of OCCRP's reporting are, by definition, involved in criminal or corrupt activity. [D.E. 172 at 14-15]. A reasonable jury could therefore conclude that even if individual statements in the Article are technically true, the overall gist—deliberately shaped by OCCRP's mission and presentation—is

that Monarch remains connected to criminal actors or conduct. *Id*. The R&R appropriately recognized that this contextual cue contributes to the article's defamatory implication, and JDN's attempt to minimize that significance is unavailing.

Similarly, *Trump* (currently on appeal) undermines JDN's argument rather than supporting it. The *Trump* court acknowledged that an implication or connotation is actionable if it is "provably false," which is precisely the standard Monarch satisfies here. *See Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023), reconsideration denied, No. 22-61842-CIV, 2023 WL 8433599 (S.D. Fla. Dec. 5, 2023). The defamatory implications at issue—that Monarch is entangled in criminal activity—are capable of being proven false and are not mere subjective opinions.

JDN's citation to *Grlpwr, LLC* is similarly misplaced. First, that decision is unpublished and therefore has no precedential value. The facts are also entirely distinguishable. *Grlpwr* involved vague, inherently subjective descriptors such as a business being described as "a little scammy," which the court held were not actionable because they lacked specific factual content and were not provably false. *See Grlpwr, LLC v. Rodriguez*, No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at 5 (N.D. Fla. Aug. 25, 2023) (unpublished). In contrast, Monarch's claim is based on the clear gist and cumulative impact of the Article—a cohesive, fact-heavy narrative asserting that Monarch is currently connected to criminal actors and engages in unlawful conduct. This is a materially different scenario from *Grlpwr*, where the court considered only isolated phrases in a social media context rather than a detailed investigative publication presenting specific, verifiable accusations.

In sum, JDN's reliance on these cases fails to undermine the Magistrate Judge's well-reasoned findings. Each of the authorities JDN cites involves either a different legal standard, an inapplicable factual context, or a holding that supports Plaintiff's theory of liability under Florida law. Monarch has pleaded a claim based on a provably false implication, supported by the Article's structure and presentation, which the R&R correctly determined to be actionable.

b. **Contrary to JDN's self-serving assertions, the Article does imply false facts.**

JDN's argument fundamentally misrepresents both the nature of defamation by implication and the substance of the R&R. Contrary to JDN's assertion, the R&R does not overlook the falsity requirement; it explicitly recognizes that the actionable implication must be materially and provably false. What JDN disregards is that under Florida law, the falsity in a defamation by

implication claim lies in the overall gist conveyed to a reasonable reader, not in isolated statements. *Turner*, 879 F.3d at 1269 (citing *Jews for Jesus*, 997 So. 2d at 1107-08).

As the R&R thoroughly explains, a reasonable jury could find that the Article implies Monarch—under its current ownership—was actively entangled with criminal figures or activity. That implication, if false, is actionable. The Magistrate Judge did not "skip over" falsity; he properly applied the well-established rule that a defamatory implication is actionable if it is "provably false," as reaffirmed in *Trump*, 684 F. Supp. 3d at 1276, a case JDN itself relies on. In fact, the *Trump* court's holding that connotations or implications are actionable when provably false supports Monarch's position—not JDN's.

The R&R's analysis of the Article's structure is precise: it highlights how the juxtaposition of technically true facts, omissions of key context, and strategic use of language—such as "nonetheless"—create a misleading and materially false impression. [D.E. 172 at 14]. For example, the Article contrasts Monarch's 2020 government contracts with the criminal pasts of Golubchik and Trincher, former owners, and layers in vague references to past misconduct and supposed business entanglements with Jacob Gitman. *Id*. While JDN may throw its hands in the air and cry foul under the banner of journalistic freedom, it brushes aside the well-established foundation of a defamation by implication claim. This case is not about punishing a media outlet for reporting facts with which the Plaintiff simply disagrees—of course that is not defamation. What *is* actionable, and what occurred here, is precisely what the Magistrate Judge recognized in the R&R: JDN took selective facts and public records, stripped them of exculpatory context, and strategically paired them with speculative, misleading, and suggestive commentary. The result is a curated narrative—not a neutral report—that implies the fact that Monarch is now involved with or benefits from criminal actors. That implication is materially false, and Monarch alleged that it is false.

Rather than engage with the substance of the defamation by implication claim, JDN again rehashes its argument that the Article expressly states certain disclaimers or clarifying points—as if that alone insulates it from liability. But this entirely misses the mark. JDN fails to grapple with how those isolated statements, when read *together* and in context, contribute to a broader defamatory narrative of fact, or that a reasonable juror could so conclude. By dissecting the Article into parts and focusing only on literal truths, JDN distorts the governing legal standard. Under well-settled Florida law, courts evaluate the *gist* or *sting* of the publication as a whole—not in

fragmented pieces. And when the Article is viewed in its entirety—as the Magistrate Judge properly did—the selective omissions, juxtaposed facts, and strategic framing undeniably convey a materially false implication of fact. JDN's continued effort to repackage this publication as neutral or objective reporting rings hollow in light of the R&R's detailed and legally sound analysis.

JDN's insistence that the word "connected" is too vague to support a defamation claim is equally unavailing. [D.E. 172 at 12]. Courts routinely allow juries to determine the meaning of such terms in context, that's the whole point of the jury in a defamation case. The implication of fact that a company is "connected to criminals" is hardly abstract when the article frames that connection in terms of present-day government contracting, alleged drug smuggling, and guilt-by-association, and questions how Monarch got government contracts with those connections. As noted in *Akai Custom Guns*, 707, 1294 F. Supp. 3d at 1294, "[d]efamation by implication is a category of defamation law that applies in circumstances where literally true statements are conveyed in such a way as to create false impression." The R&R applies this principle faithfully. Moreover, the Magistrate Judge rightly gave deference to OCCRP's own editorial framing—noting that the outlet's stated mission is to "expose[] crime and corruption so the public can hold power to account." That institutional context weighs heavily in how a reasonable reader would interpret the Article's publication about Monarch. A jury could conclude that by publishing this story under the OCCRP banner, the Article falsely signals that Monarch is in fact engaged in criminal wrongdoing. Not only is this context relevant but it is integral to the defamatory implication analysis.

The R&R carefully identifies how this implication arises from the article's structure and content, making JDN's assertion that it cannot defend itself unfounded. Monarch has alleged a clear, defamatory implication of fact that is provably false, and the Magistrate Judge correctly found that this is sufficient to defeat judgment on the pleadings. In short, JDN's objections seek to reframe the R&R's thorough analysis into a strawman argument. The Court should reject this attempt to obscure the well-pleaded and legally viable basis of Monarch's defamation by implication claim.

**IV.  The whole purpose of the Article is to juxtapose true facts to create a false implication.**

At the outset, JDN never addressed the element of juxtaposition—a core element of defamation by implication—in its original Motion for Judgment on the Pleadings. Having failed

to raise that issue initially, JDN cannot now, through its objections, reframe the legal landscape by introducing arguments the Magistrate was not asked to consider before. New arguments raised for the first time in objections to a magistrate judge's report may be disregarded. On that basis alone, the Court is free to reject JDN's newfound focus on how facts are not "juxtaposed." *See Williams,* 557 F.3d at 1292.

Even if considered, JDN's objection misrepresents the R&R and continues to fundamentally misunderstand defamation by implication doctrine. The R&R thoroughly addresses how the Article, though composed of ostensibly true facts, presents those facts in a misleading manner that gives rise to a materially false and defamatory implication—that Monarch, under its current leadership, remains involved in or benefits from criminal activity. JDN's objection reveals not a flaw in the R&R's reasoning, but simply its disagreement with the Magistrate Judge's well-supported finding that the Article's structure and framing—including its selective omissions and juxtapositions—create an actionable implication. That disagreement does not provide a valid basis to reject the R&R.

This is precisely the kind of actionable implication described by the Florida Supreme Court in *Jews for Jesus* and reaffirmed by the Eleventh Circuit in *Turner*. As these cases make clear, literal truth is not a defense when the presentation of that truth—through omission, emphasis, or juxtaposition—conveys a false overall meaning. The R&R correctly recognizes this and cites multiple portions of the Article where such a misleading impression may arise.

JDN's reliance on *Readon*, 317 So. 3d at 1233, is misplaced. In *Readon*, the court rejected the defamation by implication claim not because implication liability is inapplicable to journalism generally, but because the plaintiff failed to demonstrate that the broadcaster misleadingly framed or combined true facts to convey a false impression. The court specifically distinguished between "defamatory implications arising from misleading juxtapositions," such as in *Heekin*, and neutral contextual facts that merely provide background or relevance for the story. There, the broadcast's reference to the plaintiff as a "pastor" did not alter or enhance the defamatory character of the underlying content regarding his business dealings; it simply gave context to the story. As the court explained, "[t]he reporting of Readon's profession did not make these stories about Readon any more or less negative, but rather gave the public a context for why the stories were relevant." *Id.* at 1238.

In contrast, the Article at issue here does far more than merely contextualize Monarch's

history. It actively intertwines past criminal ownership with present leadership, juxtaposing those details in a way that a reasonable jury could find implies an ongoing association with criminal actors. The inclusion of unrelated details—such as the decades-old cocaine incident, speculative prosecutorial commentary, and the arrest of a former owner years after leaving Monarch—no doubt casts Monarch in a more negative light and goes well beyond simply "providing context" as described in *Readon*. The implication arises not from any single statement, but from the deliberate structure, omissions, and selective emphasis in the Article as a whole. Unlike *Readon*, where the reporting of negative facts was explicit and unambiguous, the Article here crafts its narrative through implication—precisely the kind of misleading presentation the Florida Supreme Court in *Jews for Jesus* held could be actionable, and which the Magistrate Judge correctly analyzed in accordance with settled law.

JDN's attempt to distinguish the Article from the facts in *Heekin v. CBS Broad. Inc.*, 789 So. 2d 355 (Fla. 2d DCA 2001), is unpersuasive and mischaracterizes both *Heekin*'s holding and the nature of Monarch's claim. JDN argues that the Article cannot be defamatory by implication because it explicitly states that the individuals with criminal histories are no longer owners of Monarch and even includes a timeline showing that fact. [D.E. 173 at 16]. But this argument misses the core of the defamation by implication doctrine and the actual holding in *Heekin*. JDN's assertion that the Article lacks the kind of juxtaposition found actionable in *Heekin*, is directly refuted by both the structure and content of the Article, as well as the Magistrate Judge's well-reasoned analysis. While JDN attempts to distinguish this case by arguing that *Heekin* involved the juxtaposition of truly unrelated facts, the Article here does precisely what *Heekin* cautions against: it presents technically accurate historical facts in a manner designed to imply a defamatory present-day connection. *Id*. at 360.

Contrary to JDN's contention, the Article does not neutrally report that prior Monarch owners had criminal backgrounds and are no longer affiliated with the company. Instead, the Article opens by referencing Monarch's name alongside "Russian criminals," and then systematically walks the reader through the criminal conduct of its former owners, their ties to the Gitmans, and the company's ongoing receipt of U.S. government contracts—interspersed with carefully placed language such as "nonetheless" and references to Monarch still operating government flights. [D.E. 172 at 12-15]. The Article further juxtaposes unrelated and prejudicial material—such as an isolated cocaine incident from nearly a decade earlier, a vague and

speculative remark by a federal prosecutor from years prior, and the arrest of a former owner after his separation from Monarch—with details of Monarch's current operations. *Id*. These editorial decisions go well beyond merely "providing context"; they are deliberately structured to lead the reader to draw the false and defamatory implication that Monarch, under its current leadership, remains entangled with criminal actors or activity. As the Magistrate Judge correctly found, this sequencing and framing could reasonably lead a juror to conclude that the Article implies a continued criminal affiliation—even if that implication is not explicitly stated. *Id*.

The Magistrate Judge correctly observed that a reasonable jury could conclude that this juxtaposition—placing historical criminal activity immediately before details of Monarch's current operations under the Gitmans—creates a materially false implication that Monarch remains connected to or benefits from criminal actors. [D.E. 172 at 12-15]. That conclusion is grounded in the plain reading of the Article and is not negated by the inclusion of a timeline or technical disclaimers. As the R&R notes, caveats are insufficient to dispel defamatory implications when the overall context "swallows up" such statements. *Id*. at 10.

JDN may disagree with the Magistrate Judge's assessment, but its disagreement does not transform the Article's structure. The implication arises not from any one isolated statement but from the deliberate editorial choices that link past misconduct to present legitimacy. This is classic juxtaposition—and it falls squarely within the doctrine of defamation by implication as articulated under Florida law

To top off their misguided objections, JDN mischaracterizes the R&R's analysis and overstates the protection afforded to statements of opinion in the defamation by implication context. [D.E. 173 at 18-20]. Although pure opinion based on disclosed facts may enjoy First Amendment protection, that protection does not extend where the overall presentation of otherwise true statements and opinions is designed to imply a materially false and defamatory conclusion. *See Time, Inc. v. Hill*, 385 U.S. 374, 389–90 (1967) ("[T]he constitutional guarantees can tolerate sanctions against calculated falsehood without significant impairment of their essential function. We held in New York Times that calculated falsehood enjoyed no immunity in the case of alleged defamation…..". That is precisely the concern here—and what the R&R correctly identifies.

Contrary to JDN's contentions, the Article does not simply report Kalman's quote in a vacuum, nor is it a detached presentation of competing viewpoints. Rather, Kalman's quote is placed toward the end of a highly suggestive narrative, framed by repeated references to Monarch's

past and current government contracts, its past owners' criminal records, and insinuations of current connections. This placement reinforces the very defamatory implication that the Article has carefully constructed—that Monarch, despite its known criminal affiliations, continues to operate under the federal government's radar, perhaps even exploiting a regulatory gap. [D.E. 172 at 14]. It is that implication—not Kalman's quotes in isolation—that gives rise to actionable defamation by implication.

JDN's assertion that the Article "implies no such thing" and that the R&R misreads Kalman's words ignores the established principle that a publication must be assessed as a whole and shows JDN's objections are rooted in the fact they disagree with the Magistrate's findings. As the R&R recognized, a reasonable jury could find that the totality of the Article—including its structure, timing, language, and sequencing—carries the implication that Monarch's present-day operations remain tainted by criminal ties, and that the government's ongoing dealings with the company are the result of insufficient scrutiny. *Id*. This is not protected opinion; it is a carefully curated false narrative with a clear defamatory sting.

JDN also contends that because the Article explicitly states that certain former owners are no longer affiliated with Monarch, no defamatory implication can arise. But this argument has already been considered and rejected by the Magistrate, and nothing in the short time since JDN filed its objection has altered the applicable law. As held in *McQueen*, even express caveats or technically accurate statements do not immunize a publication from liability when "the context of the statements swallows up the caveats." That is precisely the conclusion reached in the R&R—and rightly so.

Finally, JDN's suggestion that the Article merely reports on uncomfortable but true facts fundamentally misses the mark. [D.E. 173 at 20]. Of course, JDN maintains that the Article does not imply anything defamatory—if it conceded otherwise, the parties would not be before the Magistrate. But JDN is not the factfinder in this case. While it may insist, loudly and repeatedly, that the Article is innocuous, the Magistrate Judge concluded that a reasonable jury could find otherwise. The question is not whether isolated statements within the Article are technically accurate, but whether the deliberate arrangement and presentation of those facts, and omission of facts, imply a false and defamatory meaning about Monarch in its current form. That implication—of continuing ties to criminality—is actionable under well-established law.

Contrary to JDN's argument, Plaintiff is not seeking reporting that includes "mitigating

factors" to soften the blow of uncomfortable facts. Rather, as Florida law makes clear, a plaintiff is entitled to fair and reasonable reporting that does not misleadingly arrange or frame technically true facts in a way that implies a materially false and defamatory conclusion. JDN attempts to cast itself as the victim—portraying its conduct as the innocent reporting of public records and information—but that misses the mark entirely. This cause of action is not about punishing free speech or silencing truth. It is about holding a news organization accountable for crafting a narrative through the deliberate juxtaposition of facts to falsely suggest that Monarch, under its current leadership, remains entangled with criminality and thus should not receive government contracts.

That is the essence of defamation by implication: the injury arises not from a single false statement, but from the defamatory gist conveyed by the publication as a whole. The Magistrate Judge correctly saw through JDN's attempt to shield its narrative under the banner of technical truth and free expression, recognizing that the Article's structure and presentation can reasonably be found to imply a false and damaging connection between Monarch and criminal actors.

The entirety of JDN's objections improperly conflates the legal standards governing defamation per se, which address specific express statements, with those for defamation by implication, which require evaluating the publication as a whole and the impression it conveys to the average reader. Ultimately, JDN's objections are simply a repackaged version of its Motion for Judgment on the Pleadings—reiterating the same arguments already considered and rejected by the Magistrate. There is no legal or factual basis to disturb the Magistrate Judge's thorough and well-reasoned findings, and the R&R should be adopted in full.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court overrule JDN's Objections to the R&R and grant such other and further relief as the Court deems just.

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and served via the CM/ECF filer on June 16, 2025 to: Dana J. McElroy, dmcelroy@tlolawfirm.com; Thomas & LoCicero PL 915 Middle River Drive, Suite 309 Fort Lauderdale, FL 33304; James J. McGuire, Esq., jmcguire@tlolawfirm.com; Daniela Abratt-Cohen, Esq., dabratt@tlolawfirm.com ; Thomas & LoCicero PL 601 South Boulevard Tampa, FL 33606.

Respectfully submitted,

**STOK KON+ BRAVERMAN**
Attorneys for Plaintiff
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: service@stoklaw.com

*/s/ Joshua R. Kon*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
jkon@stoklaw.com
YOSEF Y. KUDAN, ESQ.
Florida Bar No. 1010261
ykudan@stoklaw.com