UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC,               CASE NO.: 23-61256-CIV-JB
a Florida limited liability company,

    Plaintiff,

v.

JOURNALISM DEVELOPMENT
NETWORK INC.,

    Defendant.
_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO UNSEAL SUMMARY JUDGMENT RECORDS

Plaintiff Monarch Air Group, LLC ("Monarch") files this Reply to Defendant's Opposition to Motion to Unseal Summary Judgment Records [ECF 272].

### INTRODUCTION

JDN's position rests on the incorrect premise that Monarch's damages evidence is necessary to the resolution of the parties' summary judgment motions. It is not. Monarch has consistently maintained throughout discovery and in its summary judgment briefing that its damages are minimal and total less than $63,000. [ECF 1-8]; [ECF 1-9]; [ECF 30-1]; [ECF 200-14]. Monarch does not seek to conceal the fact or amount of its damages. Rather, Monarch seeks protection only for how those figures were derived, because the underlying materials contain tax-related compilations, proprietary business analyses, and confidential client and vendor identities. [ECF 258 at 5-6, 8]. And JDN never moved for the Court to unseal those documents. Instead, JDN now attempts to piggyback on Monarch's Motion and use Monarch's compliance with the proper procedure and precedent against it. Monarch followed the required process by explaining in detail which limited materials should remain sealed and why, yet JDN characterizes that showing as somehow insufficient. JDN is seeking to penalize Monarch for doing exactly what the law requires, despite having made no effort of its own to seek unsealing or to articulate any basis for overriding Monarch's demonstrated interests.

1

Although JDN asserts that one of the main reasons it sought summary judgment is an alleged lack of damages [ECF 272 at 6], the record makes clear that damages are not pertinent to the Court's analysis at this stage. During the Court's hearing on the summary judgment motions, the Court focused on the applicable fault standard, including whether malice or negligence applies, and the parties acknowledged that damages were minimal. This confirms that the damages evidence JDN claims must be unsealed plays no meaningful role in the Court's present decision-making process.

In its Motion, Monarch demonstrated good cause through specific explanations of the harm that would result if certain materials were unsealed. Monarch did so by directly addressing the factors identified in *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007), including whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. [ECF 258]. JDN's Opposition glosses over this analysis and treats each sentence of Monarch's Motion as isolated rather than considering the Motion as a whole, which explains its fact-based and factor-driven good-cause showing.

The financial records at issue, including compiled information drawn from Monarch's tax documents that are placed into charts appended to the Cowheard reports, proprietary financial analyses, and confidential client and vendor information, contain sensitive commercial data that would cause concrete competitive injury if disclosed. [ECF 258 at 5-6, 8]. Public release of this information would reveal internal finances and expose confidential business relationships that competitors could exploit and that could jeopardize ongoing client and vendor dealings. *Id.*

It is also worth noting that Monarch does not seek to keep its interrogatory responses or damages documents fully sealed. Plaintiff's position is that these materials, ECF 200-14 and ECF 243-1 and 243-2, should be unsealed, but with limited redactions to remove client and vendor names. Those identities implicate confidential proprietary relationships that are not relevant to the adjudication of the summary judgment motions and would serve no public-interest purpose if disclosed. At a minimum, Monarch has shown good cause for these narrow redactions, and JDN has neither argued nor demonstrated why public access to the actual names of these clients or vendors has any relevance to the Court's analysis or would meaningfully advance public understanding of the issues. And JDN has not moved the Court to unseal those documents, yet now

2

seeks to leverage Monarch's proper and detailed showing against it, despite making no such effort itself.

The public's ability to evaluate the Court's reasoning does not depend on reviewing tax and financial analysis or the identities of specific clients and vendors. Sealing must be narrowly tailored, and Monarch's proposal meets that standard precisely by unsealing nearly the entire summary judgment record while protecting only those discrete categories of information that pose a genuine competitive risk if made public. *See SMA Issuer, LLC v. CPX Tampa Gateway Opag, LLC*, No. 8:11-CV-1925-T-23EAJ, 2013 WL 12214839, at 2 (M.D. Fla. Sept. 5, 2013) ("There are no less onerous alternatives to sealing—such as redaction—as the documents themselves embody the types of formulas and calculations described by Katunas as proprietary and subject to limited access even among bank employees.").

JDN's opposition mischaracterizes Monarch's confidentiality interests and inaccurately suggests Monarch seeks sweeping secrecy. The record shows the opposite. Monarch identified with specificity the harms that would result from unsealing these limited materials and proposed the least restrictive means of addressing those harms, including maintaining the seal on tax derived analyses and redacting client and vendor identities but unsealing the remainder of the interrogatory responses. Because Monarch has demonstrated good cause and proposed a carefully tailored solution consistent with Eleventh Circuit precedent, JDN's limited objection should be rejected.

## **DISCUSSION**

Monarch's sealing request concerns only the underlying sources of its already disclosed damages figure, not the damages themselves. [ECF 268]. The record reflects that Monarch has been transparent about its damages and has repeatedly acknowledged that its claimed damages are modest, if not de minimis. [ECF 1-8]; [ECF 1-9]; [ECF 30-1]; [ECF 200-14]. What remains in dispute is whether the confidential materials that JDN relies on to argue Monarch was not damaged, including tax-based compilations, proprietary analyses, and underlying financial summaries, must be made public despite their limited relevance to the issues the Court is presently deciding and the significant harm their disclosure would cause. Under controlling precedent, they should remain sealed.

JDN's effort to elevate Monarch's damages documentation to dispositive importance is contradicted by the Court's own treatment of the issue. At the summary judgment hearing, the Court concentrated on the applicable fault standards rather than on the extent of Monarch's

3

damages, and the parties themselves recognized that damages were minimal and not central to the Court's analysis at this stage. Where the Court has not treated damages as a driving analytical factor, JDN cannot justify forcing disclosure of tax-based compilations, proprietary analyses, or the identities of confidential commercial partners. And JDN has not moved the Court to unseal those documents yet now attempts to leverage Monarch's detailed and proper sealing analysis against it despite having made no such showing itself.

Monarch's Motion applied the correct legal standard and demonstrated good cause to maintain limited sealing, addressing the factors set forth in *Romero*, 480 F.3d 1246. Monarch explained why disclosure of its tax-based materials and financial compilations would expose sensitive internal financial structure and methodology, and why disclosure of client and vendor names would jeopardize active commercial relationships in a competitive industry. [ECF 258 at 5-6, 8]. Monarch also addressed the degree and likelihood of harm and the lack of availability of less restrictive alternatives, including the very redaction approach for the client and vendor names JDN does not meaningfully dispute. JDN's Opposition (not a motion to unseal) does not confront Monarch's showing under *Romero*. Instead, JDN isolates sentences from the Motion and treats them as free-standing assertions, ignoring the fact that the Motion satisfied the *Romero* factors when read as a whole.

Monarch's tax derived financial compilations and internal financial analyses are among the most sensitive categories of commercial information a private company can possess. Although Monarch's actual tax returns and financial source documents are not attached to the expert reports, the reports contain detailed analyses extracted from those materials, and the expert's deposition testimony discusses that underlying data extensively. [ECF 226-1, 226-2, 226-3, 243-3]. These analyses reveal not merely raw numbers or historical performance, but Monarch's underlying financial structure, its margins, its revenue, its expense allocation, and the internal methodologies through which it evaluates its performance and forecasts future business decisions. *Id*.

Public disclosure of such information would allow competitors to reverse engineer Monarch's pricing strategy, identify its operational strengths and weaknesses, and gain insights into its business model that Monarch would never be compelled to reveal outside the litigation context. Tax information and internal financial analyses pose unique competitive risks and therefore warrant continued protection from disclosure. *See Pliteq, Inc. v. Mostafa*, 775 F. Supp. 3d 1231, 1250 (S.D. Fla. 2025) (finding document was "financial, business, scientific, technical,

economic, or engineering information, supporting finding that document was a 'trade secret'" because "document set forth employer's orders to ship as of particular date, ***including revenue booked to date***, future orders, ***customer names***, project names, pricing, quantities, and expected shipment dates") (emphasis added); *Toms v. State Farm Life Ins. Co.*, No. 8:21-CV-736-KKM-JSS, 2022 WL 2953523, at 5 (M.D. Fla. July 26, 2022) (citing *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-cv-376-ORL37DAB, 2015 WL 5915817, at 3 (M.D. Fla. Oct. 8, 2015) (finding sufficient showing to justify sealing of deposition transcript that contained 'confidential information regarding Defendant's business operations as well as confidential and competitively sensitive information' and expert report containing 'data and analysis...which Defendant's competitors could use...to undercut' its position").

The same is true for Monarch's confidential client and vendor identities. As explained in Monarch's initial motion, these relationships are not merely names on a document. [ECF 258 at 5-6, 8]. They are the product of ongoing business development, negotiated contractual terms, and cultivated trust. In the aviation and charter industries, where competition for recurring clients and preferred vendors is particularly acute, disclosure of these identities would immediately expose Monarch's business pipelines, the identities of commercial partners, and the specific counterparties with whom Monarch is negotiating or has performed work. Competitors could then target these relationships directly, undermining the very business interests Monarch seeks to protect.

Monarch's proposal also satisfies the requirement that sealing be narrowly tailored. Monarch seeks no broad or categorical sealing. It seeks only to maintain protection over the discrete portions of documents containing tax-based data, proprietary analytic compilations, or the actual names of clients and vendors. The remainder of the interrogatory responses and damages documents would be unsealed in full. This is not a case where sealing would impair judicial transparency; it advances the core purpose of the access doctrine by unsealing nearly the entire record while preventing needless competitive injury from disclosure of extraneous, non-germane financial and client information.

JDN offers no substantive response to Monarch's good cause showing and does not contend that making names public would meaningfully advance the Court's analysis. Instead, JDN reframes the dispute as one about hiding damages. That mischaracterizes Monarch's position and sidesteps the actual issue: whether the public must be given access to confidential and proprietary business information that has little to no bearing on the Court's determination of summary

5

judgment. Because Monarch addressed the required factors, demonstrated the foreseeable harm from disclosure, and proposed a narrowly tailored approach aligned with precedent, the Court should reject JDN's limited objection and grant the Motion as filed.

## CONCLUSION

WHEREFORE, Plaintiff, MONARCH AIR GROUP, LLC, respectfully requests entry of an order unsealing the Summary Judgment Records, except for the filings identified in Plaintiff's Motion [ECF 268] which should remain sealed, and any further relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and served via the CM/ECF filer on December 2, 2025 to: Dana J. McElroy, dmcelroy@tlolawfirm.com; Thomas & LoCicero PL 915 Middle River Drive, Suite 309 Fort Lauderdale, FL 33304; James J. McGuire, Esq., jmcguire@tlolawfirm.com; Daniela Abratt-Cohen, Esq., dabratt@tlolawfirm.com; Thomas & LoCicero PL 601 South Boulevard Tampa, FL 33606.

Respectfully submitted,

**STOK KON+ BRAVERMAN**
Attorneys for Plaintiff
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: service@stoklaw.com
*/s/ Joshua R. Kon*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
jkon@stoklaw.com
YOSEF Y. KUDAN, ESQ.
Florida Bar No. 1010261
ykudan@stoklaw.com